*In re* MARRIAGE OF DONALD LASOTA, Petitioner-Appellee, and CAROLYN LASOTA, Respondent-Appellant.

First District (2nd Division)   No. 83—1489

Opinion filed June 19, 1984.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Howard A. London, of counsel), for appellant.

Lance Haddix, of Chicago, for appellee.

JUSTICE PERLIN delivered the opinion of the court:

A dissolution of marriage judgment was entered in the circuit court of Cook County on April 16, 1980, in the marriage of respondent Carolyn Lasota (Carolyn) and petitioner Donald Lasota (Donald). In a post-judgment proceeding arising from the dissolution, the trial court denied Carolyn's petition for an increase in maintenance and granted Donald's petition for termination of maintenance. Carolyn appeals the trial court's orders.

For the reasons hereinafter stated, we affirm the judgment of the trial court.

Carolyn and Donald Lasota were married in Cook County on March 27, 1976. No children were born of this marriage. The order of dissolution provided that Donald pay to Carolyn maintenance of $35 per week, "based on her making $87 every two weeks."

On June 29, 1981, because Donald had lost his job and was receiving only $268 per month in Veteran's disability compensation, the trial court reduced the amount of maintenance payments to $11.67 per week.

On December 30, 1982, Carolyn petitioned for an increase in maintenance alleging that her living expenses have increased considerably since April 1980; that Donald is employed and "can well afford to contribute more maintenance" to her; that she "has been unemployed since September 1982, and although seeking employment, remains unemployed at the present time"; and that "the $11.67 per week maintenance obligation of [Donald] is unreasonable in light of the ability of [Donald] to pay more and the present needs of [Carolyn]."

On February 15, 1983, Donald petitioned for modification or termination of his maintenance payments to Carolyn.

Pending the hearing, the court entered a temporary order increasing maintenance payments to $60 per week.

At the maintenance hearing, Donald testified that in June 1981, when the court directed maintenance payments of $11.67 per week, he was unemployed. In August 1981 he became employed as a maintenance man at the building located at 1400 Lake Shore Drive. Donald received two promotions at this job and is currently supervisor of the building. Donald, who now resides with his new wife and her child, earns $842 gross every two weeks from his employment and receives $311 per month in disability compensation from the Veteran's Administration. Donald testified that his expenses amount to $1,658 per month. He stated further that two weeks prior to the maintenance hearing he had an operation for a retinal detachment in his left eye and was unable to work for two weeks. He will receive pay for the one week he was in the hospital.

Carolyn testified that until October 3, 1982, at which time she lost her job, she worked as a waitress at the Montclare Lanes Bowling Alley, earning about $4 per hour. She collected unemployment compensation in the amount of $45 per week until December 25, 1982. Carolyn submitted to the court a list of approximately 80 restaurants, bars and bowling alleys at which she claimed to have sought employment.[1] She currently supports herself with money she saved when she worked, with money she receives from her ex-husband from a previous marriage,[2] and with $5,000 that her father had given to her in 1981. Carolyn stated, however, that she has spent all the money she received from her father. Carolyn claimed that her monthly expenses amount to $830 and that her rent was scheduled to be increased from $335 per month to $375 per month. From her previous marriage Carolyn has a 19-year-old daughter who attends the Moody Bible Institute and resides at the school. Carolyn "sometimes" contributes to her daughter's support.

The trial court terminated Carolyn's maintenance stating that "maintenance should be given with the purpose that it eventually be terminated. And that's the basis upon which I made the overall ruling."

---

[1]The trial judge appears at times to accept the list of 80 establishments where Carolyn allegedly sought employment, and alternately to question its legitimacy.

[2]The record does not establish the amounts received by Carolyn from her ex-husband.

Carolyn's motion for reconsideration was denied.

## I

Carolyn contends that the trial court abused its discretion in terminating her maintenance and argues that she is entitled to continued maintenance because she "is unemployed and unable to find a job, and Donald is employed and able to contribute to her support."

Section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) sets forth the relevant considerations for the court in determining the amount and duration of a maintenance award. Among the factors to be considered are:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) *the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;*

(3) the standard of living established during the marriage;

(4) *the duration of the marriage;*

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 40, par. 504(b).

The concept of rehabilitative maintenance is described in the Historical and Practice Notes to section 504(b)(2):

"This subsection directs the court to consider the time necessary for the party seeking maintenance to acquire sufficient education or training to find employment. This concept of rehabilitative maintenance is new to Illinois law. The amount and duration of such maintenance should be determined by reference to what is necessary to obviate marriage-conditioned needs and to enable a formerly dependent spouse to acquire financial independence for the future. Under prior decisional law, there was no duty to seek employment. [Citation.] *This subsection creates an affirmative obligation on the part of the spouse seeking maintenance to seek employment, where plausible, and this reflects one of the most important changes brought about by this Act. [Citations.]*" (Emphasis added.) Ill. Ann. Stat., ch. 40, par. 504(b)(2), Histori-

cal & Practice Notes, at 529 (Smith-Hurd 1980).

■ Maintenance awards rest within the sound discretion of the trial court and will not be disturbed on review unless the award amounts to an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 427 N.E.2d 285.) Further, "the modification of the alimony [maintenance] award will not be set aside on review unless the trial court abused its discretion." *Giamanco v. Giamanco* (1982), 111 Ill. App. 3d 1017, 1021, 444 N.E.2d 1090, 1093.

■ It is generally held that a maintenance award will be modified "only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1981, ch. 40, par. 510(a).) The burden of demonstrating the alleged substantial change in circumstances is on the party seeking relief. In determining whether and to what degree a maintenance award shall be modified, the circuit court should consider the same factors which, under the statute, are to be assessed in making the initial award. *In re Marriage of Chalkley* (1981), 99 Ill. App. 3d 478, 426 N.E.2d 237.

In *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 634-35, 450 N.E.2d 1229, 1234, the court held that the "*petitioner* [party receiving maintenance] *is under an affirmative obligation to seek appropriate training and skills to become financially independent in the future,*" and that "*[t]he failure of the petitioner to make good-faith efforts to achieve this goal, following a reasonable time frame during which the objective should be accomplished, might form the basis for a petition for modification pursuant to section 510(a) of the Act.*" (Emphasis added.)

Our review of the record here indicates that the trial court heard sufficient evidence of the parties' incomes and expenses, and of Carolyn's employment efforts and potential to enable it realistically to determine whether maintenance payments should continue. Although Carolyn claimed to have sought employment as a barmaid or waitress at 80 establishments, the trial court concluded that she has not taken an "active role in putting an end to the maintenance."

The trial court appears to have considered the various factors set forth in section 504(b) of the Act: the standard of living established during the marriage, the duration of the marriage (four years), the age and the physical and emotional condition of both parties and Donald's ability to meet his own needs while meeting those of Carolyn.

■ In our opinion, the evidence supports the trial court's conclusion that Carolyn failed to meet her affirmative obligation to seek appropriate training or education in order to become financially indepen-

dent. The trial court's termination of maintenance was, therefore, not an abuse of discretion.

## II

■ Despite the conclusion we have above expressed, Carolyn contends further that the trial court's denial of her petition for an *increase* in maintenance was an abuse of discretion. She argues that "the evidence clearly established that there was a 'substantial change of circumstances' justifying such an increase in maintenance," in that Donald's income has substantially increased since the last maintenance order; "Carolyn has absolutely no income," and her "expenses have greatly increased since the original Judgment for Dissolution in April, 1980."

Sections 504 and 510 of the Act are likewise dispositive of this issue. As we have heretofore noted, modification of a maintenance award must be based upon the factors outlined in section 504 and upon a showing of a "substantial change in the circumstances of the parties." *Gorman v. Gorman* (1979), 72 Ill. App. 3d 658, 662, 391 N.E.2d 70, 73.

A maintenance award "can be modified either when the needs of the spouse receiving alimony change or the ability of the other spouse to pay alimony changes." *Shive v. Shive* (1978), 57 Ill. App. 3d 754, 760, 373 N.E.2d 557, 562.

In the instant case, although Donald's income has increased since the maintenance order of June 1981, Carolyn has not established that she has "absolutely no income" or that her expenses have "greatly increased." She has failed to produce evidence of the amount of money currently in her bank account, and the only specific increase in expense to which she testified was the $40 per month increase in rent she anticipated for April 1983.

From the paucity of evidence offered by Carolyn and from her trial demeanor, the trial court concluded that Carolyn had failed to demonstrate a substantial change in her circumstances and had failed also to "take some active role in putting an end to the maintenance."

In our opinion, the trial court did not abuse its discretion in denying Carolyn's petition for an increase in maintenance.

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN, P.J., and STAMOS, J., concur.