*In re* MARRIAGE OF JUDITH M. LYONS, Petitioner-Appellee, and JEROME LYONS, Respondent-Appellant.

Second District   Nos. 86—0604, 86—0857 cons.

Opinion filed May 12, 1987.

Jerry S. Goldberg and Evan James Mammas, both of Mammas & Goldberg, and Grant & Grant, both of Chicago, for appellant.

William D. Lyman and Mark B. Weiland, both of Oak Brook, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Respondent, Jerome Lyons, appeals from orders entered by the circuit court of Du Page County which denied his petition to reduce unallocated support payments, granted petitioner's petition to reinstate support payments, denied respondent's motion to reconsider, and granted petitioner's motion to strike respondent's second petition

to reduce. Respondent also appeals a subsequent order which found him in contempt for failure to make required support payments.

The parties' marriage of 20 years was dissolved on June 22, 1984. The parties had three children during the marriage: Christopher, born May 4, 1965; Jeffrey, born April 26, 1967; and Carrie Lynn, born October 29, 1969. At the time of the dissolution, Christopher was a student at the University of Illinois in Champaign, while the other children were attending high school.

The dissolution decree incorporated a settlement agreement by which respondent was to pay to petitioner $1,200 per month as unallocated support. That amount was to be reduced to $1,000 per month if Jeffrey attended a "commuter" college and continued to live with petitioner or $900 per month if Jeffrey lived away from petitioner while attending college. When Jeffrey completed college, payments would further drop to $500 per month until Carrie Lynn completed college, was emancipated, or married. Any payments under $750 per month were to be considered child support only, and payments would drop by $150 per month in the event of petitioner's remarriage or continued residency on a conjugal basis with a man not her husband.

At the time of the dissolution, respondent was employed by Oak Brook Mechanical, installing and servicing heating and air conditioning systems. His income from Oak Brook Mechanical for 1984 was between $38,000 and $40,000. He also worked "side jobs" during the marriage from which he earned approximately $5,000 per year. Respondent was not working when the decree was entered, however, due to a work-related injury, although he was collecting disability benefits. Petitioner was making $185 per week as a part-time legal secretary. The parties owned a marital home in Lisle and rental property in Elmhurst.

In the summer of 1985, Jeffrey moved in with respondent, and respondent petitioned to have the support payments lowered according to the settlement agreement. Payments were lowered to $900 per month. Jeffrey soon moved back with petitioner, however, and began attending College of Du Page, a "commuter" college.

In October 1985, respondent unilaterally reduced payments to $75 per week. He then filed a petition for post-judgment relief, requesting termination of any maintenance obligation and a reduction or abatement of child-support payments. He claimed that, although released by his doctor in November 1984 to return to work following his injury, he was unable to continue the heavy work of repairing and installing heating and air conditioning systems due to pain in his injured foot.

He testified that he was forced to quit the job with Oak Brook Mechanical in April 1985 and took a job as a salesman for Guardian Heating and Air Conditioning, where he was paid $500 per week, plus a $300 monthly car expense allowance. Respondent quit that job in August 1985 and began another sales job with Unique Indoor Comfort, where he was paid on a commission basis only. He received $1,800 from that job in 1985.

At a hearing on respondent's petition, petitioner testified that she was then making $304 per week net income, having begun full-time work as a legal secretary. She had received the marital residence in the settlement and at the time of the hearing had contracted to sell the house for $178,000. The outstanding mortgage was approximately $50,000. A money market account, worth $20,000 at the time of dissolution, was worth $26,000 at the time of the hearing. Petitioner claimed that she was barely able to meet the family's needs on the amount she then received, but also testified that she had established an IRA account which she planned to increase by depositing her tax refund. There was evidence that the children had substantial amounts saved for college and that they were working part-time jobs, but that they were not contributing any of their earnings towards the family expenses.

Respondent's bank records were introduced, which showed deposits of $55,000 during the 13 months prior to the hearing. Respondent testified, however, that he frequently transferred funds between two accounts so that the total deposits inaccurately reflected his income. He also testified that much of the money deposited came from liquidating assets he was awarded pursuant to the judgment of dissolution. Although respondent had been awarded the rental property, his income and expense affidavit showed high maintenance expenses, which resulted in a negative cash flow. Finally, respondent testified that he had been able to perform only one side job during 1985 due to his injuries. While he deposited several thousand dollars from that job, he claimed his profit was only $500 after paying his helper and the costs of the job.

The trial court indicated that, in order to modify the payments, a substantial change in circumstances had to be shown. The court further indicated that the change must have occurred since the July 1985 modification. The court found the only change of circumstances to be Jeffrey's return to his mother's household. The court found that there was conflicting evidence of respondent's ability to continue his former work repairing and installing air conditioning systems. Although respondent had testified that the pain in his foot forced him to quit, the

court noted that respondent also had testified that his doctor released him to return to work. The court concluded that respondent was able to perform his former work and that the change in jobs was a deliberate attempt to evade the support obligations. Consequently, respondent's petition was denied, and petitioner's counterpetition was granted, raising the payments to $1,000 per month under the terms of the settlement agreement.

Respondent then filed a motion to reconsider, to which he attached a summary of the banking transactions to which he had testified and a report from his doctor. He also filed a second petition to reduce the support payments. Petitioner moved to strike the second petition as *res judicata*. The court denied the motion to reconsider and granted petitioner's motion to strike the second petition.

Subsequently, a rule to show cause was entered requiring respondent to show why he should not be held in contempt for failure to make the ordered support payments and for failure to pay his children's extraordinary medical expenses and his required share of Christopher's and Jeffrey's college expenses. After a hearing at which respondent claimed he was unable to make the required payments due to his employment situation, the court found respondent in contempt and ordered him to serve 30 days in the county jail. The jail term was avoidable by payment of the outstanding medical bills and $3,500 out of an arrearage in support payments of over $7,000.

Although not technically consolidated for appeal, both the denial of respondent's petition to modify the support payments and the contempt finding are factually intertwined. This opinion will therefore address both appeals.

Respondent argues that the order denying his first petition to modify his obligations under the settlement agreement is against the manifest weight of the evidence and an abuse of the trial court's discretion. He contends that his voluntary alteration of employment status constitutes a substantial change in circumstances sufficient to warrant a reduction in child support and/or maintenance. He also points to petitioner's increased income since the dissolution of marriage and her pending sale of the marital residence, as well as increases in the children's savings accounts, as indications that his support is no longer necessary or at least not needed as much as at the time of dissolution.

■ Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) allows for modification of a judgment respecting maintenance or support only upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1985, ch.40, par. 510(a).) The

burden of demonstrating a substantial change in circumstances is on the party seeking modification. (*In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 41, 465 N.E.2d 649.) In deciding whether to modify maintenance or child support, the trial court must consider the same factors it weighs, under sections 504 and 505 of the Act (Ill. Rev. Stat. 1983, ch. 40, pars. 504, 505), when it formulates an original support order. (*In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 912, 483 N.E.2d 692; *In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 41, 465 N.E.2d 649.) As with an initial award, a modification of support or maintenance rests within the sound discretion of the trial court, whose decisions in these matters will not be reversed in the absence of an abuse of discretion. *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 912, 483 N.E.2d 692.

■ While a voluntary change in occupation or employment may constitute a material change in circumstances sufficient to warrant modification of maintenance or child support, the change must be in good faith. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785.) Respondent testified that his doctor had released him to return to work in November 1984. Although respondent claimed that he was forced to quit his $40,000-per-year job due to pain in his right foot, he was able to continue that work until April 1985. He did not, moreover, introduce any medical evidence regarding his injury. As such, whether respondent's change of employment was motivated by pain was an issue of credibility. The credibility of a witness and the weight accorded to his testimony are to be determined by the trier of fact. (*In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 6, 441 N.E.2d 1277.) Furthermore, the findings of the trier of fact will not be disturbed unless against the manifest weight of the evidence. 110 Ill. App. 3d 1, 6, 441 N.E.2d 1277.

The trial court here chose not to believe respondent and found that respondent's change of jobs was not in good faith. It does not appear to us that the finding was against the manifest weight of the evidence.

■ There is no indication in the record, however, that the trial court considered petitioner's increased salary and savings, the children's increased savings, or the part-time employment of the children when it raised respondent's unallocated support obligation. As noted above, a court should consider the factors set forth in sections 504 and 505 of the Marriage Act (Ill. Rev. Stat. 1985, ch. 40, pars. 504, 505) when it modifies an order of support or maintenance. Those sections require consideration of the financial resources and needs of both the supporting and custodial parents, as well as the resources

and needs of the children. Although a trial court is not required to give a detailed listing of the factors it considered in modifying a support or maintenance obligation (*In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 408 N.E.2d 418), the trial court here clearly based its order only on Jeffrey's return to live with petitioner. We therefore reverse the order raising the unallocated support payments to $1,000 per month and the order denying respondent's petition to reduce unallocated support payments. On remand, the trial court should indicate its consideration of the above factors in deciding whether to modify respondent's obligation.

■■ ■ Respondent also contends that the trial court erred in dismissing his second petition to reduce the unallocated support payments. Petitioner had filed a motion to dismiss the second petition pursuant to section 2—619 of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), asserting the judgment on the first petition as a bar to the second. Respondent argues that the dismissal was improper because petitioner had not attached a supporting affidavit to the motion.

We find no error in the dismissal of respondent's second petition. Although section 2—619 states that the motion to dismiss shall be supported by affidavit if the grounds do not appear on the face of the attacked pleading (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), when pleading a judgment, a party need only state the date of its entry, describe its general nature, and allege generally that it was duly made (87 Ill. 2d R. 133(b)). This rule applies to judgments in motions to dismiss based upon *res judicata*. (*Edwards v. City of Quincy* (1984), 124 Ill. App. 3d 1004, 1009, 464 N.E.2d 1125.) Once a party pleads the former judgment, Rule 133(b) allows the court to take judicial notice of it. (124 Ill. App. 3d 1004, 1009, 464 N.E.2d 1125.) There is therefore no need for an affidavit, and we feel this is especially true in this case, where both petitions were filed in the same dissolution of marriage case under the same case number and where the trial court had both petitions in front of it.

The second petition set forth the same grounds for modification as the first. The only difference was that attached to the second petition was a letter from respondent's doctor which indicated that, two days after respondent's first petition was denied, the doctor examined respondent. The letter, however, is mainly devoted to the reason why respondent changed employment in the first place. There is no indication of a change in condition since the denial of respondent's first petition. It appears that respondent, having lost on his first attempt, tried to bolster his case with additional medical evidence.

"It cannot be the practice of courts to allow important matters to go to trial, and because one party is not satisfied with the results of it, let him go out and try to get facts which will enable him to do better at another trial, and rely upon such after-ascertained matters as a basis for a new trial." (*Chicago & Alton R.R. Co. v. Raidy* (1903), 203 Ill. 310, 317, 67 N.E. 783.) We thus conclude that respondent's second petition was properly dismissed.

■ We turn now to the order finding respondent in contempt for failure to make the required payments. Several months after the order was entered raising respondent's monthly payments to $1,000, a hearing was held to give respondent an opportunity to show why he should not be held in contempt for failure to make the ordered unallocated support payments, failure to contribute to Christopher's and Jeffrey's college expenses, and failure to pay the children's extraordinary medical expenses as required by the settlement agreement. At the hearing, respondent admitted that the support payments were in arrears by over $7,000. He claimed, however, that he could not afford to pay more than the $75 per week he had paid since October 1985. In fact, he testified that he was unemployed at the time of the hearing.

Although the trial court on remand will reconsider the amount of respondent's unallocated support obligation and may, therefore, reduce the amount of arrearage found at the contempt hearing, it is not necessary to reverse the contempt finding on that basis. Considering how much in arrears respondent was, it is unlikely that reconsideration based on petitioner's improved position would reduce the arrearage below the amount with which the trial court allowed respondent to purge his contempt.

Respondent argues, however, that he should not have been found in contempt since the evidence showed he was simply unable to make the unallocated support payments as ordered. Noncompliance with the order to make the payments was *prima facie* evidence of contempt. (*Taapken v. Taapken* (1976), 39 Ill. App. 3d 785, 788, 350 N.E.2d 794.) The burden then shifted to respondent to prove inability to pay. (*Shaffner v. Shaffner* (1904), 212 Ill. 492, 496, 72 N.E. 447.) To prove that defense, respondent must show that he neither has the money now, nor has he disposed wrongfully of money or assets with which he might have paid. *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 136, 319 N.E.2d 472.

■ Respondent attempted to meet his burden by relying on an expense affidavit filed during the hearing on his first petition to re-

duce. In that affidavit, respondent claimed as an expense a mortgage payment on his new wife's house. He testified, however, that the house had been sold and that they were living in respondent's rental property. He also included as a necessary expense the cost of his new wife's wedding ring. Furthermore, it appears that the equity built up on the rental property was at least $50,000. Aware of these facts, the trial court found that respondent had adequate assets to fulfill his obligation and found respondent in contempt. Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 287, 469 N.E.2d 167.) We find that the trial court neither abused its discretion nor reached a decision contrary to the manifest weight of the evidence when it rejected respondent's claim of inability to pay.

The contempt finding, however, was also based on respondent's failure to pay the children's extraordinary medical expenses, and we now address that aspect of the contempt finding. Respondent's children had incurred unpaid medical expenses in an amount of over $1,000 at the time of the contempt hearing. Respondent notes that, although the settlement agreement does require him to pay the children's extraordinary medical expenses, the agreement does not define the term "extraordinary." Respondent argues that since there was no judicial determination that the expenses were extraordinary, he should not have been held in contempt until there was such a determination and that he thereafter should have been given a chance to pay before being found in contempt.

*In re Marriage of Arnold* (1984), 122 Ill. App. 3d 776, 462 N.E.2d 51, does lend support to respondent's argument. The court there vacated a contempt finding where there was a genuine dispute over whether allergy shots were extraordinary medical expenses. Noting that the term "extraordinary" has no commonly accepted meaning, the court preferred a procedure whereby first a judicial determination is made of whether the expenses are extraordinary, and then the respondent is given a chance to pay before holding him in contempt. (122 Ill. App. 3d 776, 780-781, 462 N.E.2d 51.) We also prefer that procedure. Minimal evidence of the nature of the expenses here was introduced by petitioner, other than a brief explanation of one $600 bill for testing needed for Christopher. While that expense may properly be deemed "extraordinary," the other expenses were not explained. Thus, the trial court improperly required respondent to pay the entire amount of the medical bills without proof of their nature

and should have even then given respondent a chance to pay them before holding him in contempt. The portion of the order finding respondent in contempt for failure to pay the medical expenses is therefore vacated.

The orders of the circuit court of Du Page County are affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; vacated in part and remanded.

INGLIS and WOODWARD, JJ., concur.