*In re* MARRIAGE OF BARBARA A. KORTE, Petitioner-Appellee, and RICHARD A. KORTE, Respondent-Appellant.

Fourth District   No. 4—89—0571

Opinion filed January 4, 1990.

Joseph W. Vigneri, of Decatur, for appellant.

Lowe, Moore, Susler, McNutt & Wrigley, of Decatur (Robert I. Wrigley, Marshall A. Susler, and Susan Foley Moorehead, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal from the order of the circuit court of Macon County modifying the judgment of the dissolution of the marriage of

the parties, Barbara A. Korte, petitioner, and Richard A. Korte, respondent, to provide that respondent pay $90 per week from August 29, 1989, to May 20, 1990, and continuing in like manner each succeeding school year for a similar time period to help defray the $3,500 shortage in the college education funds of Shawna Korte, the daughter of the parties. These payments by respondent are to continue only so long as the child is enrolled in an accredited college or university and registered for a minimum of 12 credit hours. In the event the child is enrolled for a summer term on a full-time basis as defined by the college or university, the payments shall continue to be made in the same weekly amount through the summer.

The parties were married on November 27, 1965, and their marriage was dissolved on November 15, 1978. Their only daughter, Shawna, was born June 10, 1971. The judgment of dissolution awarded custody of this child to petitioner and ordered respondent to pay $50 per week as child support.

On February 21, 1989, petitioner filed a petition for educational support. At the time of the hearing, Shawna was a 17-year-old high school senior. She had been probationally accepted to Southern Illinois University (SIU). Shawna presented an estimated budget for one academic year, totalling $7,000. The budget included $2,166.60 tuition and fees, $2,624 room and board, $12 campus housing and activity fee, $450 books and supplies, and $1,747.40 living expenses. This estimate was prepared by the financial aid office at SIU. Shawna had received a $949.40 award for the fall semester 1989 from the Illinois State Scholarship Commission (ISSC). Shawna believed the award was also approved for the 1990 spring semester as well, making a total amount of $1,898.90. She also was awarded a Pell Grant for $875 for each semester, a total of $1,750. The total of all of these grants is $3,648.90, per academic year.

The ISSC letter awarding the $1,898.90 indicates it is for tuition and fees at SIU. It further states that if the tuition and fees increase, the ISSC "will automatically reconsider your award." Petitioner testified she believed the ISSC would adjust the award to cover whatever tuition and fees are due at SIU. Petitioner testified that $100 per month would be adequate living expenses. Shawna testified she thought it would take $1,747.40 per academic year, but admitted that, in her discovery deposition of April 21, 1989, she stated $80 per month would be sufficient.

Shawna had $300 in a savings account and $40 in a checking account. She currently works five or six hours per week and takes home $25 per week. She spends the money she earns on having fun, school

functions, and sometimes on clothes. She does not intend to work during her first year of college. She owns a car given to her by the respondent. No attempt has yet been made to obtain a student loan.

Based upon his testimony and financial affidavit, respondent's monthly living expenses were $1,634.17, including $215 for child support, and his monthly net income was approximately $2,225. Based on petitioner's financial affidavit and testimony, petitioner's monthly living expenses at the time of the hearing were $937.88 and her net monthly income was approximately $1,190, from three jobs. However, petitioner testified she would save the following amounts in expenses after Shawna left for college: (1) $45 per month on gas for Shawna's car, and (2) $62.50 per month on food and household supplies. An additional $35-per-month expense for dental work would be paid off in September or October 1989. On the other hand, petitioner expected her long-distance telephone expense would increase after Shawna went to college, and she would no longer be receiving the $50 per week in child support payments from respondent. Respondent testified he received a refund from 1988 Federal income taxes of $1,539.58, one-half of which belonged to his current wife. Petitioner received a refund for 1988 Federal income taxes of $1,040.42. There was testimony by respondent that he has been ill and his income is now diminished as a result.

On appeal, three issues are raised. These issues are: (1) whether the trial court's finding of a $3,500 shortage in Shawna's education funds was against the manifest weight of the evidence; (2) whether the order of the trial court requiring respondent to pay the entire amount at the rate of $90 per week was an abuse of discretion or against the manifest weight of the evidence; and (3) whether respondent was denied his constitutional right to due process of law and/or the trial court committed an abuse of discretion by failing to consider respondent's written closing argument after having considered petitioner's written closing argument.

At the close of the hearing on this matter, the trial court directed petitioner to file her written closing argument by 4:30 p.m. on May 4, 1989, and respondent to file his written closing argument by 4:30 p.m. on May 5, 1989. According to respondent, both documents were timely filed, but respondent's closing argument was not received by the trial judge from the circuit clerk until May 12, 1989, the day after the trial court entered findings of fact in a minute order. We note that the docket entry dated May 5, 1989, has been blocked out and amended to read that respondent's written closing argument was on file as of May 12, 1989. However, the date file-stamped on the docu-

ment itself reflects filing as of 2:45 p.m. on May 5, 1989. The order from which this appeal is taken was entered June 21, 1989. Since there is nothing in the record which indicates the trial court did not consider respondent's written final argument, we presume the trial court did consider respondent's written final argument, even though the trial court did enter findings of fact in a minute order.

■ Assuming, for the sake of argument, that the trial court did not consider respondent's written final argument, we believe the omission of the trial court to consider respondent's written final argument would be harmless error in this case. (See *Vieceli v. Cummings* (1944), 322 Ill. App. 559, 54 N.E. 717.) This court is concerned that the circumstances of this case could give the parties and the general public the false impression that cases are decided unfairly. On the other hand, it is the obligation of respondent's attorney, not the circuit clerk, to see that documents are filed and are brought to the attention of the judge presiding. Circuit clerks may not know when a judge has taken a matter under advisement. Had the respondent made sure the judge had a copy of the written final argument in addition to filing a copy in the circuit clerk's office, the worst that could have happened is that there would be two such documents included in the record. Therefore, any error which may have occurred was caused by respondent failing to present his written argument to the judge.

■ Nor do we believe the omission of the trial court to consider the respondent's written final argument rises to the level of a violation of defendant's constitutional right to due process. (U.S. Const., amend. XIV: Ill. Const. 1970, art. 1, §2.) Respondent was given notice and an opportunity to be heard and defend in an orderly proceeding. The proceedings were fundamentally fair to respondent. That is all that is needed to satisfy due-process requisites. (*Pettigrew v. National Account System, Inc.* (1966), 67 Ill. App. 2d 344, 213 N.E.2d 778.) Respondent was given an opportunity to submit a written final argument. Respondent did not see to it that the document got to the judge. Therefore, respondent's right to due process was not violated by the judge.

■ We further find that the findings and order of the circuit court were not against the manifest weight of the evidence. The trial court found a shortage of approximately $3,500 in Shawna's education fund. Based on the evidence, the court could reasonably find she needed $7,000 and the grants she received provided only $3,648.90. Obviously, there is a shortage of approximately $3,500. While the trial court could have been more specific, there is no need to be to decide this case.

Respondent argues that there is a dispute in the evidence concerning tuition and fees since the SIU financial aid office estimated tuition and fees at $2,166.60, while the ISSC awarded only $1,898.90. Respondent contends that it was petitioner's burden to prove the grant did not cover the entire amount of tuition and fees. In this case neither party called a witness to settle this discrepancy even though such witnesses were equally available to both parties. Therefore, this court, as did the trial court, must rely solely on the evidence in the record.

■ The letter from the ISSC awarding Shawna a grant to cover tuition and fees indicates that, if the actual tuition and fees exceed the grant, the ISSC will reevaluate the grant. However, merely saying the grant will be reevaluated does not in any way suggest the grant will automatically be increased to cover the actual tuition and fees and, if the grant is not increased, it would appear Shawna would be required to pay the difference. The trial court need not rely on petitioner's stated belief the ISSC grant will be increased to cover actual tuition and fees since there is nothing in the record to support this belief.

■ Respondent also contends the trial court was unjustified in using $1,747.70 as the living expenses for Shawna since petitioner testified $100 per month was sufficient and Shawna, in her deposition, testified $80 per month was sufficient. However, during the hearing, Shawna indicated she thought the $1,747.70 figure would be more accurate than her earlier estimate.

Respondent did not object to the admission of the documents containing the financial aid office estimate of living expenses on any ground. Respondent simply argues that other estimates of living expenses should have been adopted. Nor was Shawna questioned concerning the nature and amount of living expenses she expected to incur while at SIU. It is clear from the record that Shawna and the parties had limited experience, at best, concerning the type of expenses which might be incurred, and the trial court could rely on the ordinary experience of life to decide that the expenses for laundry, gas for the car, pizza, movies, football and basketball games, *et cetera*, would more closely approach the figure estimated by SIU than those lower estimates from Shawna and the petitioner. Certainly, after Shawna has concluded her first year at SIU, the parties will have a better understanding of the living expenses involved, and if respondent wants to seek to modify the trial court's order by presenting more detailed evidence, respondent certainly may do so at a later time.

Respondent also complains that the order finds Shawna will re-

ceive help from petitioner. Respondent states the record fails to disclose the amount of such support. It is clear from the record, however, that petitioner's support will come from other than direct cash payments. For example, petitioner testified she will still be buying Shawna's clothing. The trial court could reasonably find that such help from petitioner does not directly offset the approximate $3,500 shortage.

Next respondent contends the trial court failed to consider Shawna's financial resources. Respondent does not argue the $340 Shawna currently has in the bank must be applied before respondent is required to pay support. Instead respondent complains Shawna has not sought a loan and refuses to take employment during the first year. Considering the fact Shawna is probationally accepted at SIU and must maintain a certain grade point average to remain in school, her desire not to work the first year is understandable.

■ We recognize that the child has a duty to lessen the parents' financial burden of college expenses. (*In re Marriage of Calisoff* (1988), 176 Ill. App. 3d 721, 531 N.E.2d 810.) However, unlike *Calisoff*, Shawna is not seeking to attend an educational institution for which expenses will total roughly $20,000 per year. Shawna is minimizing the parents' expenses by attending a less expensive academic institution. While loans for education are available, it cannot be said the trial court must in every case require the student to seek a loan. Here, the evidence was that the process for seeking a loan had been initiated, but not completed. On the record before us, no loan has yet been approved for Shawna and it would be pure speculation to anticipate how much she might receive in the form of a loan and to reduce respondent's support payments as a consequence thereof. As a result, reversal of the order of the trial court on this ground is inappropriate.

■ Lastly, respondent argues that the entire burden of Shawna's education expenses has been placed on him and that petitioner is in a financial position to share those expenses. The trial court may award educational support for a child out of the income or property of both parents as equity requires. (Ill. Rev. Stat. 1987, ch. 40, par. 513.) In this case, the trial court could consider that when Shawna comes home, she will bring the dirty laundry to petitioner not respondent. If she brings home friends, they will stay with petitioner, not respondent. Petitioner testified, as earlier noted, she will continue to buy clothes for Shawna. When Shawna comes home in the summer, she will stay with petitioner, not respondent.

■ While the contribution of petitioner may not be capable of strict mathematical calculation, the trial judge could very well find

from the evidence and from his ordinary life experience that, in equity, petitioner's contributions are equivalent in value to the $90 per week respondent is ordered to pay. The standard of review in cases involving awards for educational support requires this court to find an abuse of discretion on the part of the trial court in order to reverse. (*In re Support of Pearson* (1986), 111 Ill. 2d 545, 490 N.E.2d 1274.) Based on the record before us, we find no such abuse of discretion. In the event respondent's net income is significantly reduced by reason of his illness, then of course, respondent may seek to modify the order.

Accordingly, the order of the circuit court of Macon County is affirmed.

Affirmed.

LUND and McCULLOUGH, JJ., concur.