*In re* MARRIAGE OF SHERYL LYNN IMLAY, Petitioner-Appellee, and LARRY ALVIN IMLAY, Respondent-Appellant.

Fourth District   No. 4—92—1001

Argued June 17, 1993.—Opinion filed September 30, 1993.

Holly W. Jordan (argued), of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellant.

Glenn A. Stanko (argued), of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Respondent, Larry Imlay, appeals from the November 1992 order of the trial court which denied his petition to modify his child support and educational expense obligations because he had been fired from his job. The court found "that [r]espondent's loss of employment was not fortuitous, but instead, was the result of deliberate conduct on [his] part which jeopardized his children's interests." The sole question this case presents is whether respondent's discharge from his employment for nonperformance constitutes sufficient grounds to deny his petition to reduce his support and educational obligation. We hold that it does and affirm.

## I. BACKGROUND

The parties' marriage was dissolved in July 1987, and petitioner was granted custody of their three minor children. Thereafter, the trial court entered a series of temporary support orders based on respondent's employment status until December 1988, when the court entered a permanent support order requiring respondent to pay 32% of his net employment income as support for the children. In June 1991, the court entered an agreed order providing that respondent make monthly payments of $1,010 per month—$516 in child support for the minor living at home, and $494 as respondent's share of the educational and maintenance expenses of the two children pursuing a college education. The court also ordered respondent to pay an additional $50 per month on a $3,450 arrearage.

In August 1992, respondent filed a petition to modify his support obligation. At the October 1992 hearing on that petition, respondent testified that on September 3, 1992, he had been terminated from his employment as an outside salesman for Nationwide Papers. He had sold paper products for Nationwide by calling on customers both in person and by telephone in a multi-county area extending from Peoria to Danville and from Rantoul to Carbondale. In December 1991, defendant was convicted of drunk driving (DUI), and his driver's license was revoked. Subsequently, he continued to call on his customers by telephone. He also had his present wife drive him to make personal calls on several occasions.

Beginning in June 1992, respondent's immediate supervisor talked to respondent about his failure to meet his sales goals and about his customers' complaining of infrequent personal service and communication. In August 1992, an account comprising 50% of respondent's commissions was reassigned to another salesman because of the customer's complaint of respondent's lack of contact and attention to detail. Nationwide subsequently discharged respondent in September 1992 based on his nonperformance.

At the conclusion of the October 1992 hearing, the trial court took the matter under advisement. In November 1992, the court entered a written order denying respondent's request for modification of the June 1991 support order. The court explained its ruling as follows:

> "Respondent bases his request that the Court modify his child support obligation and his obligation to contribute to the college education of the parties' two oldest children on the loss of his employment as an outside salesman for Champion International-Nationwide Papers. The Court finds, however, that Respondent's loss of employment was not fortuitous, but instead, was the result of deliberate conduct on Respondent's part which jeopardized his children's interests. Notwithstanding his employment as an outside salesman, which required extensive use of an automobile, Respondent was convicted of DUI which resulted in the revocation of his driver's license. This led to his being fired based, in substantial part, on complaints from his customers that their accounts were not being properly serviced. Respondent's request that the Court enter an order modifying his child support obligation and his obligation to contribute to the college expenses of the parties' two oldest children is denied."

## II. ANALYSIS

The decision to either grant or deny a petition to modify an award for child support or educational expense lies within the sound discretion of the trial court, and this court will not disturb the trial court's decision on appeal absent an abuse of discretion. (See *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233; *In re Marriage of Korte* (1990), 193 Ill. App. 3d 243, 250, 549 N.E.2d 906, 911.) In determining whether to reduce an order of child support, the trial court may appropriately consider any substantial economic reversal resulting from a change in employment. (*In re Marriage of Donovan* (1984), 122 Ill. App. 3d 803, 805, 462 N.E.2d 9, 11; *In re Marriage of Chenoweth* (1985), 134 Ill. App. 3d 1015, 1017, 481 N.E.2d

765, 767.) However, the party seeking a reduction must show good faith for voluntarily changing his employment. *Chenoweth*, 134 Ill. App. 3d at 1018, 481 N.E.2d at 767.

Respondent contends that the trial court erred in denying his request to modify his support payments because (1) he did not *voluntarily* lose his employment, and (2) the record contains no evidence showing either his lack of good faith or that he somehow caused his job termination because he was motivated by a desire to evade financial responsibility for his children. (See *In re Marriage of Kowski* (1984), 123 Ill. App. 3d 811, 814, 463 N.E.2d 840, 843 (a voluntary change in employment made in good faith may warrant modification of support; however, good faith is not shown where the change in employment has been prompted by a desire to evade financial responsibilities).) He asserts that the continuance of his at-will employment was not a condition within his control and that Nationwide's assessment of "nonperformance" was measured against arbitrary goals of sales and account servicing. He also argues that when, as here, the record contains no affirmative acts of on-the-job misconduct (such as insubordination, absenteeism, or substance abuse), the trial court cannot properly deem his employment termination for "nonperformance" as voluntary. Last, he asserts that the absence of evidence showing a desire to evade his support obligation or jeopardize his children's interests prompted his loss of employment demonstrates that the court erred in finding that his job loss was occasioned by his lack of good faith. We do not find respondent's arguments persuasive.

Whether respondent's conduct leading to the loss of his employment constituted acts of commission or omission, we find the evidence was sufficient to allow the trial court to conclude that his conduct was deliberate and his discharge was not merely a fortuitous occurrence. Nationwide had employed respondent as an outside salesman for three years prior to his discharge, and the sales goals set for his territory were those he himself had projected when he was hired. His supervisor testified that respondent could have continued in his employment had he made the effort required of a sales representative, and respondent admitted that following the loss of his driver's license, he had not called on his customers as he should have. Respondent's driving drunk, which resulted in his DUI conviction, adversely—and foreseeably so—affected his ability to make in-person calls on his customers. However, we also note that respondent's job performance (as shown by customers' complaints) suffered because of his failure to maintain sufficient telephone contact with his customers or to simply return phone calls—failures unrelated to his restricted mobility after

his DUI conviction. The evidence does not suggest Nationwide fired respondent for reasons beyond his control. Thus, under these circumstances, we hold that the trial court could properly view his change of employment as "voluntary."

A party who voluntarily changes employment resulting in a reduced income and seeks to modify a support obligation must show the employment change was made in good faith. See *In re Marriage of Mitteer* (1993), 241 Ill. App. 3d 217, 608 N.E.2d 607 (both the lack of evidence that a four-year degree was necessary to secure respondent's future in his chosen career and the existence of and failure to pay an arrearage had a bearing on respondent's good faith in seeking an abatement of child support); *In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 330, 547 N.E.2d 749, 751 (respondent's good-faith decision to reduce his hours of employment in order to return to school justified modification of support order from $150 to $125 per month); *In re Marriage of Lyons* (1987), 155 Ill. App. 3d 300, 304-05, 508 N.E.2d 458, 461-62 (job change allegedly prompted by injury was not made in good faith and instead was a deliberate attempt to evade support obligations where respondent was able to perform his former work); *In re Marriage of Stephenson* (1983), 121 Ill. App. 3d 698, 700-01, 460 N.E.2d 1, 3 (denial of modification of maintenance affirmed where change in economic conditions was voluntary and the result of deliberate action; respondent resigned from his job over five months prior to the expiration of his term of employment); *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, 790 (order denying modification of support order vacated where respondent's decision to quit his job to attend law school was made in good faith and not prompted by a desire to evade financial responsibility for supporting the children or to otherwise jeopardize their interests).

Moreover, respondent here may not shift his burden of proof on this matter to petitioner. The party petitioning for modification must carry the burden of showing his changed employment status was made in good faith. In other words, the party seeking the modification must present evidence of a motive—other than evasion of financial responsibility for the support of his children—in support of the petition for modification. (See *Lyons*, 155 Ill. App. 3d at 305, 508 N.E.2d at 462; *Chenoweth*, 134 Ill. App. 3d at 1018, 481 N.E.2d at 767; *In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 147, 398 N.E.2d 1243, 1245.) While proof that respondent had a motive to evade financial responsibility for the support of his children may defeat a showing of good faith, the converse is not true—the absence of such evidence does not, without more, establish respondent's good

faith. Here, the record contains no evidence of a good-faith motive for respondent's loss of employment.

Respondent argues that the decision in *Cohn v. Cohn* (1984), 122 Ill. App. 3d 763, 461 N.E.2d 1028, supports his argument, but we disagree. In *Cohn*, respondent, a striking union member, defied a presidential order to return to work and was terminated from his employment with the Federal Aviation Administration. The trial court denied the respondent's petition for modification of child-support payments, finding his loss of employment a voluntary act without good faith done in conscious disregard for his children's rights. (*Cohn*, 122 Ill. App. 3d at 765, 461 N.E.2d at 1030.) Respondent appealed, and the appellate court found that the trial court had failed to consider respondent's good-faith motives for participation in the strike. (*Cohn*, 122 Ill. App. 3d at 766, 461 N.E.2d at 1031.) The court noted that respondent, a rank and file member of the union, was motivated to participate in the strike by peer pressure and a desire to increase his salary and improve his working conditions, the same goals which had prompted successful union action in the past. (*Cohn*, 122 Ill. App. 3d at 766, 461 N.E.2d at 1031.) In contrast to *Cohn*, respondent's actions here in failing to service his accounts and his sales territory cannot similarly be viewed as motivated by efforts to improve his employment status.

The record here supports the trial court's exercise of its discretion in denying respondent's petition to modify his support obligation. We cannot conclude on this record that the trial court was *required* to reduce respondent's support or educational expense obligations merely because he lost his job.

### III. Conclusion

For the reasons stated, we affirm the order of the circuit court denying the petition for modification.

Affirmed.

McCULLOUGH and GREEN, JJ., concur.