2003-NMCA-050

64 P.3d 537

**STATE of New Mexico ex rel. HUMAN SERVICES DEPARTMENT, and Minerva Goen, Petitioner–Appellee,**

v.

**Robert B. KELLEY, Respondent– Appellant.**

**No. 22,334.**

Court of Appeals of New Mexico.

Jan. 27, 2003.

Lila Bird, Anthony C. Porter, New Mexico Human Services Department, Child Support Enforcement Division, Santa Fe, NM, for Appellee.

Beverly J. Singleman, Rachel A. Brown, Hubert & Hernandez, P.A., Las Cruces, NM, for Appellant.

*OPINION*

WECHSLER, Chief Judge.

{1} Robert B. Kelley (Father) appeals the district court's denial of his motion to reduce child support based upon a substantial and material change in circumstances. Father was sanctioned under the Parental Responsibility Act, NMSA 1978, § 40–5A–1 to 40–5A–13 (1995, as amended through 1998), and lost his license to practice law. We affirm the district court's decision to impute income based upon Father's underemployment and failure to make a good faith effort to become fully employed. We reverse the amount of the income imputation for lack of evidence and remand for the district court to determine Father's earning capacity for purposes of imputed income.

*Background*

{2} In June 1997, the New Mexico Human Services Department, Child Support Enforcement Division (HSD), filed a petition for determination of parent-child relationship against Father as the natural parent of Child. HSD sought to establish paternity and ongoing and retroactive child support in accordance with the New Mexico Child Support Guidelines, NMSA 1978, § 40–4–11.1 (1995). Father admitted paternity and was ordered to pay temporary monthly child support of $1009 beginning January 25, 1998, pending trial on the merits.

{3} The court held trial in August 1998, and entered an order and judgment in October 1998. It ordered Father to pay ongoing support of $1216 per month beginning October 15, 1998, and to pay $200 per month toward the $16,752 of accumulated arrearage. The arrearage took into account amounts Father had paid sporadically: $2500 in 1996, $0 in 1997, and $8537 in 1998. The court based the amount of support upon Father's last full-time employment as the City Attorney for Las Cruces where he received an annual salary of $78,000. Father had been involuntarily terminated from the City Attorney position in May 1996 and had not been gainfully employed since that time. Father did not appeal this order.

{4} After Father failed to make any payments pursuant to the October 1998 order, HSD and Child's mother filed a motion for order to show cause in August 1999. Father was served with the motion and amended order to show cause in December 1999. He filed a motion to reduce child support in February 2000. He argued that he was unemployed, without income, and unable to be licensed as an attorney due to the court's outstanding judgment for unpaid child support. He contended that a reduction in support was warranted based on a substantial and material change of circumstances after the October 1998 order. He sought to reduce the amount of child support and to set aside the prior order or, in equity, place the obligation at the end of Child's minority so that Father could become licensed to practice law.

{5} In February 2000, a hearing officer conducted a hearing on the order to show cause. The hearing officer determined that Father was in contempt of court for failure to pay child support and certified the matter to the district court. The district court sentenced Father to thirty days in jail with the caveat that he could purge the contempt order by paying $10,000 by March 3, 2000. The court entered an arrears judgment, including interest, against Father for $42,209 and ordered ongoing child support in the amount of $1216 per month beginning March 15, 2000. The court noted and HSD agreed that Father could get his driver's license and law license back by paying $10,000 by March 3, 2000, and by continuing payment of his monthly support obligation.

{6} Upon the request of HSD, the court delayed a hearing on Father's motion to reduce child support. Father was incarcerated on March 15, 2000, and was released from jail on April 3, 2000. Upon his release, the court ordered him to make diligent efforts to obtain gainful employment and to make weekly reports to his attorney documenting his efforts to obtain employment for submission to the court and HSD.

{7} Father began making the reports on April 21, 2000, but ceased the reports on May 15, 2000, when he obtained a job making $15 per hour as a "legal helper" with the Sando-val Law Firm working between twenty-four and thirty-five hours per week.

{8} In August 2000, the court heard Father's motion to reduce child support. The court, acting through a hearing officer, found that there had been a substantial and material change in circumstances affecting the welfare of Child and, in September 2000, entered an order requiring Father to pay $422 per month in support and $84 per month toward the accumulated arrearage of $44,145. These payments were based upon Father's $15 per hour wage, imputing forty hours per week. The order was temporary and was to remain in effect until February 2001 when it would be reevaluated. Father was ordered to begin submitting monthly reports to the hearing officer and the district court, demonstrating his efforts to gain further employment and have his law license reinstated.

{9} At the hearing in February 2001, the hearing officer was not satisfied with Father's efforts and, in an order dated March 27, 2001, denied Father's motion to reduce child support and ordered him to begin paying $807 per month in support and $161 per month toward the accumulated arrearage beginning March 1, 2001. The hearing officer acknowledged that Father's driver's license and professional license had been suspended due to his failure to pay child support, but also found that Father was underemployed and that he had failed to make diligent efforts to become fully employed. The hearing officer continued income imputation of $78,000 as set forth in the original October 1998 order based upon Father's "last full time employment."

{10} Father filed a motion for rehearing and objections to the hearing officer's report and decision. Father argued that the hearing officer did not consider revocation of his license to practice law and his driver's license as disqualifying him "from employment as a matter of law." He contended that the hearing officer wrongfully imputed income based on the amount Father earned as an attorney because Father's disbarment precluded him from earning that kind of salary. Father contended that the court could not impute income because he was not voluntarily under-

employed given the "legal impossibility of performance."

{11} The district court denied Father's motion and affirmed and ratified the report and decision of the hearing officer in an order on April 13, 2001. Father appeals this order.

*Timeliness of Father's Appeal*

{12} We initially address a procedural question. HSD maintains that Father is barred from seeking relief because he failed to appeal the October 1998 order. However, Father is not contesting the original order or the arrearage that accrued before he filed his motion. Instead, he is making a timely appeal of the denial of his motion to modify future support obligations pursuant to NMSA 1978, § 40–4–11.4(A) (1991).

*Underemployment and Imputation of Income*

■ {13} Father's only issue on appeal is whether the court committed an error of law by continuing to impute $78,000 of income to him for purposes of calculating child support after he had lost both his license to practice law and his driver's license. The child support guidelines require the imputation of income to an unemployed or underemployed parent to the level of employment at full capacity. Section 40–4–11.1(A), (C)(1); *Quintana v. Eddins*, 2002–NMCA–008, ¶¶ 10, 16, 131 N.M. 435, 38 P.3d 203.

■ {14} In evaluating imputation of income and a claim of underemployment, the court must determine if a parent " 'acted in good faith to earn and preserve as much money to support her [or his] children as could reasonably be expected under the circumstances.' " *Quintana*, 2002–NMCA–008, ¶ 16, 131 N.M. 435, 38 P.3d 203 (quoting *Boutz v. Donaldson*, 1999–NMCA–131, ¶ 6, 128 N.M. 232, 991 P.2d 517). Even if a parent is not acting primarily to avoid a child support obligation, "the relevant inquiry is whether the parent's career choices are reasonable under the circumstances." *Id.* ¶ 17.

{15} We review district court determinations in this context for an abuse of discretion. *Id.* ¶ 24; *Styka v. Styka*, 1999–NMCA– 002, ¶ 8, 126 N.M. 515, 972 P.2d 16 (holding that district court will be reversed if, in exercising its discretion, it sets an amount that is not in accordance with the guidelines). Father does not argue that we should review findings that were made by the hearing officer and ratified by the court any differently. Therefore, we will affirm the findings on Father's lack of good faith absent an abuse of discretion.

■ {16} Cases involving the loss of a license and failure to obtain professional employment emphasize the reasonableness of attempts to get a new job and good faith efforts to regain the lost license. *See, e.g., Crystal v. Corwin*, 274 A.D.2d 683, 710 N.Y.S.2d 207, 209 (N.Y.App.Div.2000) (holding that when the father lost his teaching license and job due to possession of illegal drugs, voluntarily left his only subsequent regular employment, and failed to put forth persuasive proof of reasonable and sincere efforts to secure employment, he was not entitled to a downward modification of his child support). In this case, there is no indication that Father voluntarily suspended his law license or failed to obtain more lucrative employment merely to lower his support obligation. However, Father cannot obtain a reduction in support to a level below that which can be set based on an imputation of income from work he is reasonably able to obtain, with reasonable, good faith efforts. *See In re Marriage of Bregar*, 952 P.2d 783, 785 (Colo.Ct.App.1997) (stating that lack of initiative in finding or keeping work may be considered a voluntary refusal to fulfill support obligation); *In re Marriage of Imlay*, 251 Ill.App.3d 138, 190 Ill.Dec. 539, 621 N.E.2d 992, 994–95 (1993) (holding that in order for child support to be reduced, the father must show a good faith reason for loss of his job; it is insufficient that the opponent is unable to establish a bad faith reason, such as an effort to avoid his support obligation). Indeed, Father lost his income by virtue of the Parental Responsibility Act because of his failure to provide child support. A lesser requirement of Father would defeat an important purpose of the Parental Responsibility Act, which is to reduce the State's financial obligation when parents do not provide

for their minor children. Section 40–5A–2(B).

{17} At the hearing on the order to show cause in February 2000, Father indicated his willingness to do whatever the court asked, offering to obtain non-legal employment or to seek jobs outside of New Mexico. Father's counsel represented that Father would make every effort to secure employment. At the first motion hearing in August 2000, Father testified that, in compliance with the court's earlier demands, he had taken a job as a "legal helper" with the Sandoval Law Firm. He testified that, although he had other offers, he had declined to take alternative employment because of his one-year commitment with his current employer. The hearing officer found that there had been a material and substantial change in circumstances warranting a temporary reduction in child support. In light of Father's testimony that he was working twenty to thirty hours per week, the hearing officer found that Father was underemployed and imputed a forty-hour work week at $15 per hour. The hearing officer ordered Father to take action to regain his license and become fully employed, either with his current employer or elsewhere, and to submit monthly reports on the action taken.

{18} Contrary to the hearing officer's explicit instructions to work additional hours and to take steps toward becoming licensed, at the time of the second motion hearing in February 2001, Father was still working as a legal helper for the same employer and still working less than thirty hours per week. Father admitted that he had not sought employment outside of the legal field or any other full-time employment because of his perceived contractual obligation to his current employer. He testified that other attorneys would hire him if he had his license, but he provided no evidence of such offers and no testimony that he had ever approached HSD in an effort to get his license back. Father testified that he worked five hours per day and, instead of spending the other three hours seeking additional employment, he took care of his mother even though his mother could afford to hire people to help with her daily living tasks. He testified that he had not obtained any part-time employment because it was difficult to contact him

during the day and because he did not check daily for messages on his home answering machine. As a consequence, the hearing officer concluded that Father had not taken advantage of the temporary reduction in his child support obligation and had lost all credibility. The hearing officer determined that Father had made no real effort to work since leaving his job as a full-time attorney, and therefore imputed an income of $78,000 and imposed a support obligation of $807 per month.

{19} By ratifying the hearing officer's order, the district court did not fail to consider Father's loss of license and inability to regain his license as factors in deciding whether to impute income, as Father argues. Rather, Father's testimony and promises at the hearings in February 2000, August 2000, and February 2001, provided substantial evidence to support the finding that Father was underemployed and had failed to make reasonable and diligent efforts to become fully employed, despite being given ample time to get his professional life in order. Thus, the district court did not abuse its discretion by ratifying the hearing officer's decision to deny Father's motion and to continue to impute income to Father.

{20} Father additionally appears to assert that his efforts to become fully employed and to regain his law license were reasonable under the circumstances, citing to *Quintana* in support of this contention. However, in *Quintana*, this Court found the father's decision to work in New Mexico instead of California or elsewhere to be reasonable and determined that the father's salary of $46,000 was "within only $4,000 of the range of salaries proved by Mother to be appropriate for someone with Father's job skills in New Mexico." 2002–NMCA–008, ¶ 20, 131 N.M. 435, 38 P.3d 203. Additionally, the father in *Quintana* desired to limit his weekly working hours to forty and to limit his employment opportunities to New Mexico so that he could be close to his child. *Id.* ¶ 22. This Court held that this desire reflected a proper balance in favor of "non-monetary parental responsibilities, at least in the absence of findings of bad faith or other special circumstances." *Id.*

{21} In this case, Father was not working full time in his chosen profession and was not

earning wages that were within a reasonable range for someone with his skills. Moreover, there is no evidence that Father's decision to work only five hours per day was to honor his "non-monetary parental responsibilities." *Id.* As a result, substantial evidence supports the finding that Father's career choices were, in fact, not reasonable.

*Amount of Imputation*

█ {22} The amount of income to be imputed is a separate question. The district court's order imputes income to Father in the amount of $78,000 per year based on his former employment as City Attorney.

█ {23} In *Quintana*, we recognized that "the child support statute offers little guidance to trial courts in evaluating the significance of a discrepancy between actual income and earning potential for the purpose of imputing income." *Id.* ¶ 23. Contrary to Father's contentions, a court can do more than merely impute full-time hours, but the determination is "left to the sound discretion of the trial court, to be made after considering whether the parent has acted in good faith and whether the parent's actions are reasonable under the totality of the circumstances." *Id.* ¶ 24.

{24} In *Quintana*, the parties introduced evidence showing that the father's actual earnings were within the general salary range that was also proven by the evidence. *Id.* Both parties introduced evidence regarding the father's actual and potential income. *Id.* ¶ 10. The mother introduced testimony regarding the father's earning potential and introduced evidence of job advertisements soliciting someone with the father's qualifications. *Id.* ¶ 13. This Court held that the evidence showed that the father could earn $40,000 to $80,000 per year as a computer programmer in New Mexico. *Id.* ¶ 20.

{25} By contrast, there was no evidence in this case that Father is currently capable of earning $78,000 per year. HSD did not present evidence of jobs Father could obtain paying $78,000 per year without a law license. Nor was there evidence that Father currently had resources outside of his earnings which could be used to meet his support obligation. Although Father has the burden

of proving inability to pay, *see Nelson v. Nelson*, 82 N.M. 324, 327, 481 P.2d 403, 406 (1971); *Thomasson v. Johnson*, 120 N.M. 512, 516, 903 P.2d 254, 258 (Ct.App.1995), imputation of $78,000 of income based solely on Father's status as a former governmental agency attorney is speculative and contrary to reason. *See Spingola*, 91 N.M. 737, 742, 580 P.2d 958, 963 (1978); *L.C.S. v. S.A.S.*, 19 Va.App. 709, 453 S.E.2d 580, 585 (1995) (stating in dictum that when the incarcerated father lost his law license after being convicted of felony sexual offenses, income imputation would be inappropriate because the father was legally barred from practicing law and "any imputation of income based on [legal] employment would be speculative").

{26} As a result, the district court abused its discretion by imputing $78,000 of income to Father absent evidence that Father could secure earnings within that range if he made reasonable, good faith efforts to do so. We therefore remand for the district court to determine, based upon evidence presented, Father's earning potential and his resources outside of earnings, if any. The court may then impute that income for its child support order.

*Conclusion*

{27} The district court acted within its discretion in finding that Father failed to make reasonable and good faith efforts to become fully employed, justifying the finding that Father was voluntarily underemployed and the imputation of income. However, the district court abused its discretion by imputing income of $78,000 based upon Father's last full-time employment as an attorney because the imputation was not supported by substantial evidence, or any evidence which would support a finding that Father was capable of earning that income.

{28} We remand for the district court to determine Father's earning potential.

{29} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JONATHAN B. SUTIN, Judges.