2002-NMCA-008

38 P.3d 203

Judith QUINTANA, Petitioner–Appellee,

v.

Owens EDDINS, Jr., Respondent–Appellant.

No. 21,882.

Court of Appeals of New Mexico.

Dec. 12, 2001.

Rachel A. Brown, Hubert & Hernandez, P.A., Las Cruces, NM, for Appellee.

Mary W. Rosner, Las Cruces, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} In this appeal, we consider whether a parent is underemployed for the purpose of imputing income in determining child support when the parent is working full time in his area of expertise, but is earning less than he had made previously when employed in a different state and less than he could make if he had accepted a position with a private company rather than with a state institution. In addition, we determine whether dividend and interest income earned on a self-employed pension, individual retirement account (SEP–IRA) may be treated as income in calculating child support.

{2} We hold that as long as a parent is working full time in his area of expertise, earning an amount of money within the range presented by the evidence, and in a location reasonably accessible to his child, the trial court may not find that he is underemployed without making a specific finding of bad faith. We accordingly reverse the trial court's finding that Father is currently underemployed to the extent found by the trial court, and we instruct the trial court to recalculate child support based on an annual salary of $50,000. We affirm the trial court's inclusion of the income generated by Father's SEP–IRA in the determination of Father's child support obligation. Finally, although we conclude that the trial court did not abuse its discretion in awarding Mother attorney fees given the disparity in resources available to the parties, we remand to the trial court for reconsideration of the award in light of the fact that Father's actual income is not substantially greater than Mother's income and in light of the parties' relative successes on appeal.

## FACTS AND PROCEDURAL HISTORY

{3} Appellant Owen Eddins (Father) met Appellee Judith Quintana (Mother) in 1997. Father was employed as an independent computer programmer in the San Francisco Bay area, and Mother worked as a school counselor in Las Cruces, New Mexico. In March 1998, Father ceased working as a computer programmer. Two months later, Mother learned that she was pregnant. Father moved to Las Cruces in October 1998, to pursue his relationship with Mother and to enroll in graduate school. From October 1998 until June 1999, Father and Mother lived together in Mother's home in Las Cruces. Father attended classes and Mother continued to work as a counselor. Child was born on December 13, 1998.

{4} Mother and Father separated on June 24, 1999. Two weeks later, Mother filed a petition to establish paternity, custody, and child support. At the time that the petition was filed, Father remained unemployed. In November 1999, Mother filed a motion for interim child support, and a hearing was held in January 2000. At the time of the hearing, Father had secured a telecommuting position in which he worked 30 hours per week and which paid $20,000 per year. Father testified that he accepted the position because it allowed him to work at home and did not require him to work during the day time, when he had visitations with his daughter. He further stated that it was his intention not to seek full-time employment so that he could be a stay-at-home parent. Mother introduced evidence that, while employed full time as an independent computer consultant in California, Father earned approximately $155,000 per year. The hearing officer found that Father was underemployed and imputed to Father a yearly earnings of $155,065.00. Father appealed the hearing officer's decision to the district court, which considered the matter de novo at a hearing held on custody and support issues in June 2000.

{5} After the interim award of child support was entered, Father's employer offered Father a full-time position at a salary of $40,000 per year. Father declined the offer. However, prior to trial, Father accepted a full-time position at the University of New Mexico (UNM) in Albuquerque. The position requires Father to work 40 hours per week and pays approximately $46,000 per year.

{6} Despite the fact that Father had since obtained full-time employment, Mother continued to argue at trial that Father was underemployed and requested that the trial court award child support based on Father's earning potential rather than his actual income. In support of her argument, Mother introduced evidence, through two witnesses and the cross-examination of Father, that Father had earned substantially more income while employed in California and had the potential to earn more income either in California or in New Mexico. Based on this testimony, the trial court affirmed the hearing officer's finding that Father was underemployed and imputed to Father income of $90,000 per year.

{7} In addition to imputing income based on Father's alleged earning potential, the trial court found that Father owned a SEP–IRA worth approximately $160,000. Father testified that the value of the SEP–IRA in-

creased by $7,589 in the first three-quarters of 1999. An exhibit, Father's 1999 Form 1099 for the SEP–IRA, indicated $7,589 in dividends and capital gains of $689. Father's reply brief concedes that the $7,589 is accurately characterized as interest. The trial court included $7,000 of interest as income when it calculated Father's child support obligation. Finally, based on its finding of a disparity in income and financial resources between the parties, the trial court awarded Mother $15,000 in attorney fees, pursuant to NMSA 1978, § 40-4-7(A) (1997).

{8} Father appeals, arguing that the trial court abused its discretion in three ways: (1) in finding that Father was underemployed and in imputing to Father an annual income of $90,000, (2) in including as income for child support purposes $7,000 per year of the interest earned on Father's SEP–IRA and in stating that Father's SEP–IRA should be considered a reserve fund available to meet his child support obligation in case Father chooses not to earn more money by changing jobs, and (3) in awarding Mother $15,000 in attorney fees.

## DISCUSSION

### Standard of Review

{9} The setting of child support is left to the sound discretion of the trial court as long as that discretion is exercised in accordance with the child support guidelines. See Styka v. Styka, 1999–NMCA–002, ¶ 8, 126 N.M. 515, 972 P.2d 16. The guidelines require the trial court to make findings regarding the income of both parents and to calculate support obligations based on these findings. NMSA 1978, § 40-4-11.1(E) (1995); see also Major v. Major, 1998–NMCA–001, ¶ 4, 124 N.M. 436, 952 P.2d 37. We review the trial court's factual findings to determine whether they are supported by substantial evidence. See Styka, 126 N.M. 515, 972 P.2d 16, 1999–NMCA–002, ¶ 8. In conducting this review, we view the evidence in the light most favorable to the prevailing party and indulge all reasonable inferences in support of the findings. See Las Cruces Prof'l Fire Fighters v. City of Las Cruces, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Finally, to the extent that Father's appeal requires us to consider ques-

tions of law, we review these questions de novo. See Styka, 126 N.M. 515, 972 P.2d 16, 1999–NMCA–002, ¶ 8.

### Imputation of Income

{10} Section 40-4-11.1(C)(1) defines income as "actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed." At trial, Mother and Father both introduced evidence regarding Father's actual and potential income. This evidence is best characterized as falling into two general categories: (1) Father's actual and potential income in California and (2) Father's actual and potential income in New Mexico. The evidence regarding California is as follows. While employed as an independent consultant in 1997 and 1998, Father earned approximately $155,000 per year. Gail Sherman, a senior technical recruiter from the San Francisco Bay area, testified regarding Father's current earning potential in California. Ms. Sherman testified that an individual with Father's skills could expect to make $90,000 per year in the Bay area. Although she acknowledged a lack of familiarity with the New Mexico job market and of the average wage of computer programmers in New Mexico, Ms. Sherman testified that it was possible that Father could telecommute from New Mexico to California. Ms. Sherman did not testify regarding the salary range for such positions, but opined that Father was underpaid at $46,000.

{11} With respect to Father's income while living in New Mexico, the evidence showed that, at the time of the hearing on Mother's motion for interim child support, Father was employed 30 hours per week at a salary of $20,000 per year. After the hearing but before trial, Father's employer offered Father a full-time job with a salary of $40,000 per year. Father declined this offer and later accepted a full-time position with UNM at a salary of $46,000 per year.

{12} At trial, Tom Herndon, who had programming experience similar to Father's and who had spoken with Father regarding the possibility of telecommuting between California and New Mexico, testified that he worked in the same field as Father, had been em-

ployed in Arizona for three years, and, at the time of trial, earned $64,200 per year. He further testified that Father had told him that he could earn more money by telecommuting. Finally, Mr. Herndon testified that, although he was not allowed to telecommute in his current position, his supervisor was considering allowing employees to telecommute in the future.

{13} While testifying, Father acknowledged that he could earn $60,000 per year in New Mexico if he accepted a position with a private business, such as Intel. He testified that he had not accepted such a position because he did not wish to work more than 40 hours per week because he wanted time to be with his child. During cross-examination, Mother's attorney showed Father two advertisements for positions in his field, one of which offered a position in Albuquerque, the other of which offered national opportunities. The advertisement for the local position indicated a salary range of $50,000—$80,000 per year. The advertisement offering positions in "all U.S. geographical areas" indicated a salary range of $70,000—$100,000 per year with the potential for bonuses up to $140,000. Father testified that he had not applied for either position. He offered no excuse for failing to apply for the former position, but said that he expected to earn $50,000 from UNM within a year. He would not apply for the second position because it would require substantial time away from his child.

{14} The trial court made two findings related to its conclusion that Father was underemployed:

[10]d. The Hearing Officer made a finding that the Respondent is voluntarily under employed, and the Respondent has admitted that he could earn more money if he were to return to the Bay Area of California, but that he has chosen to remain in the State of New Mexico to be near his child and participate in her upbringing.

[10]e. Based upon the circumstances of this case, particularly including the foregoing, and the testimony offered at trial in this matter, including that of Gail Sherman, a recruiter for senior technical employees [in the Bay area], the Court finds

that a salary of at least $90,000.00 per year is to be reasonably imputed to the Respondent, due to his under employment.

{15} Father challenges the trial court's imputation of potential income to him on three grounds: (1) the fact that Father had secured a full-time position in his field of expertise precluded a finding that he is voluntarily underemployed; (2) if such a determination was not precluded, the trial court nonetheless abused its discretion in allowing the recruitment executive from California to testify regarding the availability of telecommuting positions in New Mexico and the average salary of a person with Father's skills and in considering evidence regarding employment opportunities in California; and (3) if the appropriate community of reference for determining Father's employment capacity is New Mexico, the court abused its discretion insofar as its finding of underemployment would require Father to work more than 40 hours per week and the evidence was insufficient to support the court's finding that Father could earn $90,000 in New Mexico.

{16} When evaluating a claim of parental underemployment, trial courts must determine whether the parent has "acted in good faith to earn and preserve as much money to support her [or his] children as could reasonably be expected under the circumstances." *Boutz v. Donaldson*, 1999–NMCA–131, ¶ 6, 128 N.M. 232, 991 P.2d 517. The purposes of allowing a trial court to impute income to an underemployed parent are to discourage the parent from shirking the obligation to support one's children and to encourage the underemployed parent to work at full capacity for the benefit of the children. *See, e.g., Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001) ("An important reason—if not the chief reason—for imputing income to a voluntarily underemployed parent is to goad the parent into full employment by attaching an unpleasant consequence (a mounting child support debt or, in certain cases of shared custody, a reduced child support payment) to continued inaction."). In fulfilling these purposes, courts must balance the right of the children to the parents' support and the right of the parents to make decisions regarding their lifestyle

and employment. *See Pugil v. Cogar*, 811 P.2d 1062, 1066 (Alaska 1991) (discussing the tension between locking a parent into a career or job and the burden that a parent's career change may place on the child).

{17} Although not defined by our cases or the child support guidelines, "good faith" in the context of underemployment typically means acting for a purpose other than to reduce or avoid a child support obligation. *See generally* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine*, 29 Conn. Law Rev. 647, 658 (1997). In cases in which a parent does not act primarily to affect a child support obligation, the relevant inquiry is whether the parent's career choices are reasonable under the circumstances. *See Boutz*, 128 N.M. 232, 991 P.2d 517, 1999–NMCA–131, ¶ 6. In the case at bar, the primary issue is whether the trial court considered the correct circumstances in reaching its conclusion that Father's decision to work at UNM rather than to seek employment in California or elsewhere was unreasonable and justified the imputation of income.

{18} Mother makes much of the fact that Father voluntarily left his career in California to move to New Mexico. Mother infers that this decision was unreasonable and serves as a basis for finding that Father is voluntarily underemployed. Mother asks us to evaluate Father's decision to leave California in light of the many opinions refusing to make a downward modification in a parent's child support obligation when the parent has voluntarily chosen to leave a lucrative position for a position paying substantially less money. *See, e.g., Wall v. Wall*, 611 So.2d 1107, 1108–09 (Ala.Civ.App.1992) (affirming finding that father was underemployed where evidence showed that father's position as a salesperson paid significantly less than father's former position as a pilot and that reason father was no longer employed as a pilot was father's unjustified failure to take an annual physical). The significant factor distinguishing the case at bar from the cases cited by Mother is that, in this case, Father was unaware that Child had been conceived at the time Father left his employment in California. As such, the question before us is not whether Father's decision to leave California was reasonable in light of his support obligation, which was nonexistent at the time of the move, but whether the potential for Father to make more money in California is an appropriate factor for the trial court to consider in determining whether Father is currently underemployed. We conclude that it is not. *See Marsh v. Marsh*, 105 Ohio App.3d 747, 664 N.E.2d 1353, 1354–55 (1995) (holding that trial court abused discretion by imputing income to parent based on what parent had earned in prior employment in foreign country absent evidence that parent could earn comparable salary in county in which parent currently resided; decided under statute which directed court to consider employment opportunities in community in which parent resides).

{19} For the purpose of determining a parent's earning potential, we determine that the community of reference is the community chosen by the obligor parent, unless the evidence shows the parent chose that community for the purpose of avoiding the child support obligation. *See* Becker, *supra*, at 658 (noting unanimity among jurisdictions regarding finding of underemployment when parent acts primarily to avoid or reduce a child support obligation). Particularly when parents live in the same state or community as their children, it is inappropriate to consider job market information from areas that would require parents to relocate. As we noted above, one of the reasons for imputing income to an underemployed parent is to encourage the parent to become fully employed to meet the child support obligation. If the amount of income imputed can be earned only if the parent moves, imputation puts the parent in the untenable position of choosing between playing an active role in the child's upbringing and leaving to earn enough money to meet the support obligation. We believe that this choice is contrary to the public policy of our state. *See* NMSA 1978, § 40–4–9.1(A) (1999) (establishing a presumption that joint custody is in the best interests of a child and defining joint custody to allow both parents to play a significant role in a child's upbringing). Because

there is no evidence that Father left California for the purpose of reducing or avoiding his child support obligation, the trial court was limited to evaluating Father's earning capacity in New Mexico or by telecommuting from New Mexico.

■ {20} Limiting our inquiry to New Mexico, the evidence showed that Father could earn between $40,000 and $80,000 per year working as a computer programmer. However, there was no showing that Father would qualify for the $80,000 in the job advertised at $50,000 to $80,000 and all of the other possibilities required work in excess of 40 hours per week. The salary currently earned by Father is $46,000 per year. Father inexplicably did not apply for the job advertised at $50,000 at the low end of the range. Because Father's current salary is within only $4,000 of the range of salaries proved by Mother to be appropriate for someone with Father's job skills in New Mexico, we conclude that the trial court erred in finding that Father is underemployed by any more than $4,000. In addition, Father conceded at trial that he fully anticipated his salary to be $50,000 in the very near future.

{21} We recognize that the evidence introduced at trial appeared to support the trial court's findings insofar as the recruiter from California testified that Father could telecommute from New Mexico to California and that Father could earn $90,000 working in California. However, after reviewing the trial tapes, it is clear that the recruiter did not make the necessary connection between the $90,000 salary and telecommuting opportunities in New Mexico and did not consider the necessity of extensive travel requirements or work over 40 hours per week. The recruiter did not offer a professional opinion that Father could earn $90,000 telecommuting from New Mexico while working no more than 40 hours per week.

■ {22} We are aware of cases that require parents to work in excess of 40 hours per week, especially if they have histories of so doing. *See* Becker, *supra*, at 660–61 ns. 34–35, 667 n. 59. The issue raised by these cases is one of balancing competing interests. On the one hand, there is the parents' inter-

est in legitimate freedom of career choices and legitimate need for time to be parents. On the other hand, there is the requirement that parents maximize income to support their children. We believe that the proper balance tips in favor of freedom of choice and non-monetary parental responsibilities, at least in the absence of findings of bad faith or other special circumstances. *See* Becker, *supra*, at 687. As such, the recruiter's evidence does not withstand careful scrutiny and is otherwise insufficient to support the findings.

{23} We further recognize that, except for excluding custodial parents actively caring for children under the age of six from the concept of underemployment, the child support statute offers little guidance to trial courts in evaluating the significance of a discrepancy between actual income and earning potential for the purpose of imputing income. *See* § 40-4-11.1(C)(1). Accordingly, we reaffirm the test described in *Boutz*, namely that the trial court must determine whether a parent's career choice is made in good faith and is reasonable under the circumstances, but with some additional guidance. *See Boutz*, 128 N.M. 232, 991 P.2d 517, 1999–NMCA–131, ¶ 6. Should the legislature wish to provide greater guidance to the trial courts in making this determination, we note that jurisdictions such as North Dakota have defined underemployment as actual earnings that are less than 60% of the average wage for a given profession, *see Nelson v. Nelson*, 547 N.W.2d 741, 745 (N.D.1996) (discussing regulation defining underemployment as earning less than "six-tenths of prevailing amounts earned in the community by persons with similar work history and occupational qualifications"), or have limited the court's discretion in imputing income when a parent is employed full-time and the evidence does not support a finding of bad faith, *see Schumacher v. Watson*, 100 Wash.App. 208, 997 P.2d 399, 403 (2000) (discussing statute that a court may not impute income to a parent with gainful employment on a full-time basis).

■ {24} Unless the legislature decides to amend our child support statute to provide

clearer guidance for making a determination of underemployment when a parent is gainfully employed on a full-time basis, this determination will be left to the sound discretion of the trial court, to be made after considering whether the parent has acted in good faith and whether the parent's actions are reasonable under the totality of the circumstances. *See Boutz,* 128 N.M. 232, 991 P.2d 517, 1999–NMCA–131, ¶¶ 5–6. In this case, however, where Father's actual earnings are within the general salary range proved by the evidence, and where there was no evidence that Father chose to work at UNM to avoid or reduce his child support obligation, we conclude that the evidence was insufficient to sustain the trial court's finding that Father is underemployed by any amount in excess of $4,000.

### SEP–IRA

{25} As noted above, a trial court must determine both parents' gross income prior to setting child support. *See* § 40–4–11.1(E). The child support guidelines define "gross income" as including

income from any source and includes but is not limited to income from salaries, wages, tips, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, significant in-kind benefits that reduce personal living expenses, prizes and alimony or maintenance received[.]

Section 40–4–11.1(C)(2).

The trial court made the following findings with respect to Father's SEP–IRA account:

[10]  c .... the Respondent receives dividends and interest income of approximately $7,000.00 per year.

 . . . .

11.  Each of the parties earn[s] interest income and the Court finds that the amount to be included in connection with calculation of child support should be as follows:

a.  The sum of $144.00 per month by way of interest income to the Petitioner; and

b.  The sum of $583.33 per month by way of interest income to the Respondent.
12.  The Court finds that the Hearing Officer's determination that the statutory definition of gross income permits the consideration of income even if it is retirement related, and to the extent that the Respondent has access to funds he has deposited in an IRA, the Court may require that he use these funds, if necessary, to comply with his child support obligation, particularly when there has been an imputation of income, is correct and to be affirmed by the Court. In connection therewith, the Court elects not to make a determination of the monthly amount to be included in the child support calculation in connection with the SEP IRA, but instead, such should be considered as a reserve enabling the Respondent to pay his child support obligation even under circumstances where additional income is imputed to him.

{26} Father asserts three points of error with respect to the court's findings: (1) the inclusion of the annual income earned on the SEP–IRA was error insofar as this income is not available to Father; (2) the rate of return on the IRA is not fixed and therefore the evidence was insufficient for the trial court to set a value of $7,000 per year; and (3) the trial court lacked the authority to require him to liquidate his SEP–IRA to meet his support obligation. We are not persuaded by Father's arguments and conclude that the trial court did not abuse its discretion in its treatment of Father's SEP–IRA.

■ {27} Father argues that retirement-related income, such as his SEP IRA, is not income for the purpose of child support calculations because the income is not readily available and is not explicitly included in the list of sources of income set forth in Section 40–4–11.1(C)(2). Father argues that the income generated by his SEP IRA is unavailable insofar as a tax penalty would be incurred if he withdrew the funds early. We disagree that the potential tax penalties render the income unavailable for child support calculation purposes. The majority of cases

addressing this issue have held that interest or dividends earned on an IRA may be considered as income when calculating child support. *See Dunn v. Dunn,* 952 P.2d 268, 272 (Alaska 1998) (rejecting argument that tax consequences of early withdrawal from an IRA preclude consideration of income earned on IRA for child support purposes); *In re Marriage of Tessmer,* 903 P.2d 1194, 1196 (Colo.Ct.App.1995) (holding that gross income can include interest or dividends earned on an IRA). The fact that Father would pay a penalty for withdrawing money from the SEP–IRA prior to reaching the age of retirement does not render the money unavailable. *See Nelson v. Nelson,* 651 So.2d 1252, 1253–54 (Fla.Dist.Ct.App.1995) (distinguishing voluntary contributions to a SEP IRA from mandatory retirement payments and reversing trial court's exclusion of former as income for purposes of support calculations). A penalty or taxes may impact the amount of money available, but Father raised no such issue either below or on appeal. *See Dunn,* 952 P.2d at 272.

{28} We further reject Father's argument that retirement-related income cannot be used for child support because such income is not explicitly included in the list set forth in Section 40–4–11.1(C)(2). As the Alaska Supreme Court recognized in *Dunn,* 952 P.2d at 272, income earned on an IRA is similar to many of the benefits included in the list of income sources to be considered for child support purposes. For example, Section 40–4–11.1(C)(2) specifically includes both interest and dividends as income. In addition, the list includes income from pensions, trusts, capital gains, and social security. *See id.* Finally, in describing the types of income to be used to determine a child support obligation, the legislature explicitly stated that the list of income sources was not exclusive. *See id.* Because the statute does not exclude income related to retirement from other types of income and the income earned on the SEP–IRA, namely interest and dividends, is included in the list devised by the legislature, we conclude that the trial court was justified in including this income in its calculations of Father's child support obligation.

{29} In addition to arguing that the income generated by the SEP–IRA was excluded under state law, Father argues that the same result is required under federal law because a SEP–IRA is protected under the Employee Retirement Income Security Act. Father concedes that this argument was not raised below. Because Father failed to raise this argument below, we will not address it on appeal. *See* Rule 12–216(A) NMRA 2001; *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987).

{30} Father challenges the sufficiency of the evidence underlying the trial court's decision to include $7,000 from his SEP–IRA earnings. Father testified that he earned more than $7,000 in interest and dividends on his SEP–IRA during the first three-quarters of 1999. The record indicates that he made a similar amount in 1997. Based on this evidence, the trial court did not abuse its discretion in finding that Father earns $7,000 per year in interests and dividends. We note that if the income earned on Father's SEP–IRA should change sufficiently, Father may seek a modification of his child support obligation under NMSA 1978, § 40–4–11.4 (1991).

{31} Finally, we reject Father's argument that the trial court erred in requiring him to liquidate his SEP–IRA to meet his child support obligation. After reviewing the court's order and the record in this case, we can find nothing to substantiate Father's claim that he was required to do so. Instead, it appears that the trial court merely recognized Father's SEP–IRA as an alternative source of income for meeting his child support obligation should Father's other sources of income prove insufficient. Again contrary to Father's assertions, the trial court appears to have treated Father's SEP–IRA and Mother's savings account equally in setting the parties' respective child support obligations. Although the trial court did not make any findings with respect to the $17,000 remaining in Mother's savings account, clearly that account is an alternative source of income for meeting Mother's child support obligations should her other sources of income prove insufficient. Finally, we note that the trial court considered the annual interest earned

**444**

on Mother's savings account as income when calculating Mother's own obligation.

{32} In sum, we find nothing in the language of the child support guidelines to support Father's argument that retirement-related income cannot be considered as income in calculating a parent's child support obligation. Because the trial court's findings with respect to Father's SEP–IRA were supported by substantial evidence, we hold that the trial court did not abuse its discretion in its treatment of the retirement account.

### Attorney Fees

{33} The award of attorney fees is left to the sound discretion of the trial court. *See Bustos v. Bustos,* 2000–NMCA–040, ¶ 24, 128 N.M. 842, 999 P.2d 1074. In determining whether to award attorney fees, "a showing of economic disparity, the need of one party, and the ability of the other to pay, has been characterized as the primary test in New Mexico." *Id.* ¶ 27 (citation, internal quotation marks, and emphasis omitted). The purpose of allowing an award of attorney fees in a domestic relations proceeding is to insure that both parties are able to make "an efficient preparation and presentation" of their respective cases. Section 40–4–7(A).

{34} In this case, the evidence showed that, prior to the initiation of the child support proceedings, Mother's savings totaled approximately $34,000, while Father's SEP–IRA totaled approximately $160,000. By the time of the trial, Mother had spent approximately $17,000 in attorney fees, leaving her with savings of $17,000. The evidence shows that Mother's attorney fees totaled over $31,000, of which she paid $17,000 from her savings. The trial court's award of $15,000 to Mother appears to have taken into account the disparity in the parties' savings, acknowledged that Mother had the resources to pay the initial $17,000 from her savings, and required Father to pay Mother's remaining attorney fees to insure Mother an ade-

quate presentation of her case. *See* § 40–4–7(A). Under these circumstances, we conclude that the trial court did not abuse its discretion in ordering Father to pay the remaining $15,000 owed for Mother's attorney fees.

{35} Nonetheless, the trial court's award of attorney fees to Mother was based in part on its erroneous imputation of $90,000 per year of income to Father and its determination that Father's imputed income was nearly twice Mother's actual income. In addition, we note that Mother has challenged her award on appeal and has asked this Court to reevaluate the award in light of her relative success on appeal. For these reasons, and because we are remanding for other purposes, we remand for the trial court to reassess its attorney fees award in light of this opinion and institute any modifications the court may wish in its discretion.

## CONCLUSION

{36} For the foregoing reasons, we hold that the trial court abused its discretion in finding that Father was underemployed and imputing more than $4,000 in income to him on that basis. We remand with instructions to recalculate child support using $50,000 for Father's salary. We affirm the inclusion of the annual income generated by Father's SEP–IRA. We remand for reconsideration of the issue of appropriate attorney fees. We decline to award Mother attorney fees on appeal.

{37} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, CELIA FOY CASTILLO, Judge.