This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**HERMAN D. SANCHEZ,**

Petitioner-Appellant,

v.                                    **NO. 28,997**

**KELLYANN J. SANCHEZ,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**George P. Eichwald, District Judge**

The Family Law Firm, P.C.
Felissa M. Garcia
Albuquerque, NM

for Appellant

Monica D. Baca
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**FRY, Chief Judge.**

Father appeals the district court's order denying his objections to the special master's report and calculating child support obligations for the parties. Father challenges the recommendations of the special master, the calculation of child support,

and the inclusion of private school tuition in the calculation. Father also claims that attorney fees should be granted to him based on Mother's violation of a prior court order, and Father asks this Court to review the district court's procedures for assigning cases to be heard by a special master. We affirm the district court's order.

**BACKGROUND**

Father and Mother have two children, Jonathan and Jontel. In July 2004, the parties entered into a stipulated settlement agreement and final decree of dissolution of marriage (July stipulation), which resolved issues regarding child custody, child support, property, debts, taxes, and attorney fees. The parties also agreed that the status quo would be maintained with respect to doctors, dentists, child care, extracurricular activities, and education at San Felipe Catholic School for Jonathan. The parties agreed, by initialing changes made to the July stipulation, that they would share the cost of Jonathan's tuition. The July stipulation set Father's obligation for child support at $802 per month. The district court judge initially assigned to the case was Judge Jewell, who found in a minute order that all issues between the parties were resolved by the July stipulation "with the exception of the issue of private tuition of the minor child, as it relates to child support." Judge Jewell referred the issue of "Jontel's private education, as it relates to a child support calculation," to a special

master. Judge Jewell specifically noted that Jonathan's private education expenses were already included in the child support calculations.

After hearing argument from the parties, the special master recommended that Jontel be allowed to attend San Felipe Catholic School beginning at the same age that Jonathan started attending the school and that both Father and Mother should share the cost of Jontel's tuition. Although the parties argued other issues during the hearing, the special master clarified that the only issues before her were whether Jontel should attend private school and what effect that would have on the parties' child support obligations. During the discussion on the calculation of child support, Mother agreed that the special master could consider Father's payments for the children's insurance and her increase in income since the entry of the July stipulation. Accordingly, the special master recommended that, beginning October 1, 2004, Father's child support obligation should be reduced to $750 per month, and beginning June 1, 2005, the date that Jontel was to start school, Father's child support obligation should increase to $968 per month. Father filed objections to the special master's report on November 5, 2004. Father claimed that Jontel's private school tuition should not be part of the child support obligation. Father also claimed that, without an evidentiary hearing, it was error to find that the parties must continue to pay for

Jonathan's tuition as part of the child support obligation. A hearing on Father's objections was set for January 19, 2005.

On the date of the hearing, Judge Jewell recused due to the fact that Mother was employed with the district court. Between January and August 2005, the chief judge of the second judicial district recused all other judges in the judicial district from hearing the case, Father's counsel withdrew from representation of Father, and the Supreme Court designated Judge Eichwald of the thirteenth judicial district to preside over the case. A hearing was set for March 1, 2006, but was never held, reportedly because the parties did not receive notice. A number of hearings were set and then vacated. Ultimately, a hearing on all pending matters was held on April 29, 2008.

At the April 2008 hearing, the parties presented argument on several matters, including Father's objections to the special master's recommendations and the parties' child support obligations. Judge Eichwald denied Father's objections to the special master's report and entered a child support order based on the parties' 2007 income.

**DISCUSSION**

On appeal, Father raises a number of issues that concern the parties' stipulation entered on July 26, 2004, and the hearing before the special master on September 22, 2004. For example, Father claims that his overtime earnings should not have been considered when calculating child support; that it was error to require him to share the

cost of tuition for Jonathan, and that even if he were to share in tuition costs, there should have been a downward deviation in child support; and that Judge Jewell should not have assigned the special master to hear any portion of the case. In support of his arguments, Father refers to oral comments made by Judge Jewell prior to entry of the July stipulation and oral comments made by the special master and Judge Eichwald. We point out, however, that "[o]ral statements of a judge in articulating [a] ruling . . . do not constitute a 'decision' . . . and error may not be predicated thereon." *Balboa Constr. Co. v. Golden*, 97 N.M. 299, 304, 639 P.2d 586, 591 (Ct. App. 1981). We will consider oral comments as instructive in determining the intent of the judge only when there is ambiguity in the judge's decision. *See San Pedro Neighborhood Ass'n v. Bd. County Comm'rs*, 2009-NMCA-045, ¶ 8, 146 N.M. 106, 206 P.3d 1011. However, Father does not claim ambiguity in the July stipulation, the special master's recommendations, or Judge Eichwald's order. Therefore, we will not consider Father's arguments to the extent that they rely on oral comments made below.

The parties signed a stipulated agreement in which they agreed to the child support calculations, that Jonathan would continue to attend private school, and that the cost of Jonathan's tuition would be included in the child support. Judge Jewell clarified that all of the issues between the parties were resolved with the exception of whether Jontel should also attend private school and what effect that would have on

the parties' child support obligations, and the parties agreed with that clarification. Judge Jewell entered a minute order to that effect and sent the case to the special master for recommendations solely on the remaining unresolved issues. As noted above, although Father attempted to raise other issues before the special master, the special master informed Father that her review was limited to the unresolved issues included in the minute order.

Father did not assert below any justification for setting aside the July stipulation to which he had agreed. Therefore, we reject his challenges to the July stipulation's inclusion of Jonathan's private school tuition and the calculation of child support based on it. As for his argument that Judge Jewell should not have appointed a special master, Father concedes that he never made this argument below. Therefore, we will not consider this claim. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (filed 2004). We limit our review to the decisions that were made by Judge Eichwald in his order of August 18, 2008.

**Objections to the Special Master's Recommendations**

Father attacks the special master's recommendations, using a broad, scattershot approach. We therefore first review the role of a special master and delineate the issues decided by the special master in this case.

Judge Jewell appointed the special master pursuant to Rule 1-053 NMRA, which provides that the district court may limit the powers of the special master to review and report on particular issues; the special master shall submit a report to the district court and either party may file objections to the report; and the district court, after holding a hearing, may adopt, modify, or reject the report in whole or in part or may receive further evidence or may send the case back to the special master with instructions. Rule 1-053(C), (E)(1), (2). In this case, Judge Eichwald adopted the special master's report after holding a hearing on April 29, 2008.

Judge Jewell gave the special master authority to address only two questions: (1) whether Jontel should be enrolled in private school that both parties would pay for, and (2) what effect enrollment in private school would have on the child support calculations. Importantly, Judge Jewell did not give the special master authority to revisit issues decided by the July stipulation, including the income of the parties used for calculation of child support or the private school tuition for Jonathan. The issue of Jonathan's tuition was not before the special master and not included in her

7

recommendations and, therefore, Father's attempt to include the issue in his objections was ineffective. The special master's recommendations were that Jontel should also be enrolled in private school and that the child support calculation should be adjusted to include tuition for Jontel, Mother's increase in income, and Father's insurance payments.

Father claims that the special master's recommendations regarding child support were arbitrary and capricious and not supported by substantial evidence. Father claims that the special master erred in assuming that Father would continue to earn overtime wages and in failing to reduce Father's child support obligation based on his claim that he had not worked overtime hours for two months prior to the hearing. Father also argues that there was no evidence presented to the special master showing that the parties could afford to pay the private school tuition.

Father's arguments are without merit. The figure used by the special master regarding Father's income was the same figure Father agreed to in the July stipulation for child support calculations. As directed by Judge Jewell and as found by the special master, the only child support issue that the special master had the authority to address was whether Jontel's private school tuition should be shared by the parties for purposes of child support. The special master did not have the authority to determine whether Father's income should or should not have included overtime.

On the issue of whether the parties could afford private school tuition for Jontel, the evidence presented to the special master established that the tuition was $300 per month. Father maintained that he could not afford to pay his share of Jontel's tuition because he had a mortgage payment of $1055 per month and a car payment of $663 per month, and that neither child should attend private school. Yet Father had stipulated that Jonathan should continue to attend private school and that he would continue to pay his share of Jonathan's tuition. The special master concluded that Jontel should have the same advantage.

To the extent that Father is claiming that Judge Eichwald did not properly review the special master's recommendations before adopting them, we disagree. "[T]he district court must accept the special master's findings of fact unless they are clearly erroneous." *See Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶ 16, 122 N.M. 103, 920 P.2d 1057. Given the discrete issues assigned to the special master to consider and the stipulations the parties made in the July stipulation, we cannot say that the special master's findings were not supported by substantial evidence.

**Behavior of the Special Master**

Father also claims that the special master behaved improperly by advocating on behalf of Mother. In his brief, Father states that he provided Judge Eichwald with specific examples of the special master's improper conduct and bias. We have

9

reviewed the transcript of the hearing, and although Father's counsel used such words as "bias" when presenting Father's case, there is no indication that Father's counsel specifically asked Judge Eichwald to find that the special master behaved inappropriately. Nevertheless, because Father's counsel read from the transcript of the hearing before the special master and argued to Judge Eichwald that the special master made numerous errors, we will address Father's claims.

According to Father, the special master failed to perform her duties with impartiality when she suggested that Mother was facing struggles similar to Father, stated that expenditures by Father might be more than those of Mother but that the percentages were the same, and explained that it would not be appropriate for Mother to pay 50% of the tuition because Mother did not have 50% of the income. Father analogizes to the provisions of the Code of Judicial Conduct that require a judge to recuse if the judge's impartiality might be questioned. *See* Rule 21-400(A)(1) NMRA. We are not persuaded. "In order to be disqualifying, [a judge's] bias or prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Dawley v. La Puerta Architectural Antiques, Inc.*, 2003-NMCA-029, ¶ 39, 133 N.M. 389, 62 P.3d 1271 (filed 2002) (internal quotation marks and citation omitted). There is nothing in the record before us indicating that the special master's findings were

based on any extrajudicial source. Indeed, the special master's comments appear to us to be in the nature of explanations of her recommendations, which are not prohibited.

Father also claims that the special master unfairly refused to consider his argument against including overtime earnings in his income despite the fact that the special master revised the worksheet to reflect Mother's increase in income and Father's insurance costs. We are not persuaded. The special master changed the worksheet to reflect Mother's increased income and Father's payment of insurance with the agreement of the parties. Mother apparently did not agree to revise the worksheet to eliminate Father's overtime earnings, and the special master had no authority to make such a revision. We hold that the special master did not act inappropriately.

**Child Support Calculation**

Father challenges the calculation of child support in this case by broadly attacking the calculation from the July stipulation, the calculation recommended by the special master, and the award entered by Judge Eichwald. As discussed above, the parties agreed to the child support award in the July stipulation, and Father did not move to modify that award. The child support award recommended by the special master was based on Jontel's tuition, Mother's increased income, and Father's

11

payments for insurance. Judge Eichwald adopted the special master's recommendation that Jontel's tuition be shared by the parties. Therefore, the only determination left for Judge Eichwald to make was the calculation of the parties' child support obligations beginning from the date of the April 29, 2008, hearing.

An award of child support is within the discretion of the trial court so long as it is in compliance with child support guidelines. *See Quintana v. Eddins*, 2002-NMCA-008, ¶ 9, 131 N.M. 435, 38 P.3d 203 (filed 2001). Father argues that Judge Eichwald erred in ignoring his concern that the parties could not afford private school tuition, in ignoring "Judge Jewell's inclination and direction to lower child support," and in refusing to allow a downward deviation based on the imputation of income to him. We are not persuaded. We find nothing in the record to support Father's claim that Judge Eichwald ignored the arguments and evidence presented by the parties. Instead, the record shows that Judge Eichwald heard many portions of the transcripts from the hearings before Judge Jewell and the special master, heard extensive argument from counsel, and asked the parties a number of questions before making his decision. In addition, Judge Eichwald directed the parties to submit 2007 W-2 forms to ensure that the information regarding their income was current. As for Father's claim that Judge Eichwald ignored "direction" from Judge Jewell, Father refers only to oral comments made at the July 2004 hearing and not to the language

12

in the July stipulation or in Judge Jewell's minute order. As discussed above, the oral comments Judge Jewell made before entering the July stipulation do not constitute a decision, and we will not find error based on those comments. *See Balboa Constr. Co.*, 97 N.M. at 304, 639 P.2d at 591.

Finally, Father claims that income was erroneously "imputed" to him for purposes of calculating child support. Father argues that by virtue of the imputed overtime income, his share of "uncovered expenses increased proportionately to the increase of his income due to the addition of unearned overtime" and that his "proportionate share" of expenses for medical, dental, and extracurricular activities was inflated.

With respect to the child support calculation, Judge Eichwald stated that the child support award was based on the parties' 2007 earned income. We presume that Judge Eichwald was correct, and it is Father's burden to demonstrate error. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990). Father claims, without providing record support, that his base income was $4,298 per month. Father argued to Judge Eichwald that his "base" income should be used rather than the income established by his 2007 income tax returns. Father has not designated for appeal the income evidence that Judge Eichwald relied on. Therefore, we presume that the evidence presented to Judge Eichwald established that

13

Father's income was $4,509 per month, as listed on the worksheet Judge Eichwald completed. *See Michaluk v. Burke*, 105 N.M. 670, 676-77, 735 P.2d 1176, 1182-83 (Ct. App. 1987) (explaining that "[w]here the record on appeal is incomplete, the ruling of the [district] court is presumed to be supported by the evidence").

Furthermore, income is the actual gross income and earnings of a parent and includes income from any source. *See* NMSA 1978, § 40-4-11.1(C)(1), (2) (2008). Income is imputed when a parent is unemployed or not employed to full capacity as shown by a discrepancy between the parent's actual income and the parent's earning potential. *See State ex rel. Human Servs. Dep't v. Kelley*, 2003-NMCA-050, ¶ 13, 133 N.M. 510, 64 P.3d 537; *Quintana*, 2002-NMCA-008, ¶ 23; *see also* § 40-4-11.1(C)(1). In other words, income is based on actual earnings, and imputed income is based on potential earnings. Based on our presumption above, the evidence submitted to Judge Eichwald established that Father's actual earned income was $4,509 per month, and this amount did not include Father's potential earnings. Therefore, we reject Father's argument that the child support award was based on income wrongly imputed to him.

To the extent that Father is arguing that Judge Eichwald should not have ordered the parties to pay their proportionate share for extracurricular activities and medical expenses, we point out that the parties agreed to this in the July stipulation,

and neither party challenged that agreement. We hold that Judge Eichwald did not abuse his discretion in entering the award of child support.

**Attorney Fees**

Father contends that Judge Eichwald should have required Mother to pay the attorney fees he incurred in enforcing the terms of the July stipulation. The only part of the July stipulation that Judge Eichwald enforced at Father's instigation was the requirement that Mother pay the Capitol One credit card bill, even though she had discharged the debt in bankruptcy. Judge Eichwald denied Father's request for attorney fees, stating that his attorney should have looked into having Father's name removed from the account and informing Father that he could pursue an order to show cause against Mother if the bill was not paid. It was within Judge Eichwald's discretion to decline to award attorney fees in this divorce action. *See Lucas v. Lucas*, 95 N.M. 283, 285, 621 P.2d 500, 502 (1980). We hold that Judge Eichwald did not abuse his discretion by refusing to require Mother to pay Father's attorney fees.

Mother requests that we order Father to pay her attorney fees on appeal as the prevailing party in this case, pursuant to Rule 12-403(A) NMRA. Father did not respond to this request. In support of her request, Mother states that Father earns over twice as much as she does, that she cannot afford the cost of this appeal, and that her attorney fees amount to $5,000, plus tax. Rule 12-403(A) permits an award of

15

attorney fees on appeal to the prevailing party if such an award is "provided by law." Although we agree that Mother is the prevailing party, we remand her request to Judge Eichwald to determine, in his discretion, whether Mother is entitled to an award for the attorney fees she incurred in this appeal. This is because many fact-intensive factors inform the determination, such as the economic disparity between the parties, the needs of the parties and the parties' ability to pay, prior settlement offers, the total amount of fees expended by each party, success on the merits, the complexity of the issues, and the abilities of the parties' attorneys. *See* Rule 1-127 NMRA (allowing attorney fee awards in divorce actions); *see also Garcia v. Jeantette*, 2004-NMCA-004, ¶ 19, 134 N.M. 776, 82 P.3d 947 (filed 2003) (discussing factors to be considered for an award of attorney fees in a domestic relations case). Judge Eichwald is in a better position than we are to assess the evidence on these factors.

**CONCLUSION**

For the reasons discussed above, we affirm the order filed on August 18, 2008. We remand the issue regarding Mother's request for attorney fees related to this appeal.

16

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**ROBERT E. ROBLES, Judge**