This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38571**

**BERTHA M. SIQUIEROS LANGARCIA,**

Petitioner-Appellee,

and

**NEW MEXICO HUMAN SERVICES DEPARTMENT,**

Intervenor-Appellee,

v.

**JAVIER BALDERAMA,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Maria Sanchez-Gagne, District Judge**

Bertha M. Siquieros Langarcia
Santa Fe, NM

Pro Se Appellee

Javier Balderama
Santa Fe, NM

Pro Se Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Appellant Javier Balderama (Father) appeals two separate district court orders, the first finding that he was in contempt of court for his failure to pay child support and entering an arrearage judgment and the second an order modifying his child support obligation. On appeal, Father makes several arguments about the validity of each order.

For the reasons that follow, we vacate the order of contempt, remand for proceedings in accordance with this opinion, and otherwise affirm.

## BACKGROUND

**{2}** We begin by noting Father, a pro se litigant, makes numerous arguments, several which overlap, regarding the two separate orders at issue on this appeal. Many of the issues he raises concern orders that have not been appealed and are therefore not before us. "Although pro se pleadings are viewed with tolerance, a pro se litigant is held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." *In re Camino Real Envtl. Ctr., Inc.*, 2010-NMCA-057, ¶ 21, 148 N.M. 776, 242 P.3d 343 (omission, internal quotation marks, and citation omitted). "[I]t is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. To the extent that we discern Father's arguments, we address them below.

**{3}** Father and Petitioner Bertha Siquieros Langarcia (Mother) share four daughters (Children). In January 2018, Father was ordered to pay $476.50 per month in ongoing child support, $95.30 per month in reduction of the support arrearage, a judgment was entered against Father for $37,692.70 representing child support arrears through November 2017, and an additional judgment was entered against Father for $4,643.18 representing accrued interest through November 2017. In December 2018, the New Mexico Human Services Department Child Support Enforcement Division requested an order to show cause of why Father should not be held in contempt based on Father's failure to make payments as required in the January 2018 order. After a show cause hearing later that year, the hearing officer recommended that Father be found in contempt of court and sentenced to 179 days in detention, all of which was suspended, provided he pay $150 per month for contempt purposes every month during the term of his suspended sentence. Father objected to the recommendations, and the district court affirmed the order. Father appeals that contempt order.

**{4}** After the contempt order was issued, Father moved to modify the child custody order that granted sole custody to Mother, granted him limited visitation rights, and imposed a child support obligation on Father. After a hearing on the matter, the district court adopted recommendations from the hearing officer, which included a decrease in Father's required child support payments to Mother. Father appealed after the district court resolved his objections to the order. Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve further discussion of specific facts where necessary to our analysis.

## DISCUSSION

**{5}** Father makes several arguments concerning each appeal. Regarding the contempt order, he argues (1) he had a right to counsel; (2) he cannot be hired because he is undocumented; (3) the district court did not follow federal guidelines during the

proceedings; (4) judicial employees' training constituted an equal protection violation; (5) the findings from the district court constituted an equal protection violation; (6) he was indigent; and (7) he was not acting in bad faith. Regarding the child support order, he argues (1) he had a right to counsel; (2) he cannot be hired because he is undocumented; (3) the order violated his right to equal protection; (4) this Court must clarify if he was acting in bad faith; and (5) he was indigent.

## I.      Order of Contempt

## A.      Father's Right to Counsel During the Contempt Proceedings

**{6}**      Father argues he was entitled to counsel during the civil contempt proceedings because his case hinged on his ability to comply, he faced legal counsel for the State, he had an abnormally complex case, and the current procedures did not provide fair process.

**{7}**      Our Supreme Court has determined that "the due process clause of the [F]ourteenth [A]mendment does not require the appointment of counsel in every case where an indigent faces the possibility of imprisonment if found to be in civil contempt for failure to comply with an order of support." *State ex rel. Dep't of Human Servs. v. Rael*, 1982-NMSC-042, ¶ 15, 97 N.M. 640, 642 P.2d 1099. However, the district court must make a case-by-case evaluation of the need for counsel in such proceedings. *Id.* ¶ 16. In evaluating an indigent party's request for counsel, the district court must consider "the indigent's ability to understand the proceeding, the complexity of the legal and factual issues, and the defenses that might be presented." *Id.* ¶ 16. In this case, the district court's order does not demonstrate that it considered these factors in response to Father's request for counsel. We therefore vacate the district court's order of contempt and remand the case for further proceedings consistent with this opinion. Because we reverse and remand this case on the basis of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, we need not consider Father's other claims regarding the order of contempt.

## II.      Order for Child Support

## A.      Father's Due Process Right to Counsel During the Child Support Modification Proceedings

**{8}**      Father relies on *Turner v. Rogers*, 564 U.S. 431 (2011), to argue he was entitled to counsel during the hearing regarding his motion to modify the child support order. *Turner* considers the due process right to an attorney for parents in a civil contempt proceeding based on their failure to pay child support, *id.* at 448, and not to the right to counsel at a proceeding to modify child support arrangements or child custody requirements. *Turner* does not apply to this matter. Because Father cites no relevant authority to support his proposition, we assume there is none and decline to further address this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where arguments are not supported by cited authority,

we presume counsel was unable to find supporting authority, will not research authority for counsel, and will not review issues unsupported by authority).

## B.    Father's Ability to Work as an Unauthorized Alien

**{9}**     Father next argues that the requirement from the district court that he find work violates the Immigration Reform and Control Act of 1986 (IRCA). We construe Father's argument to be that because he is not authorized by IRCA to work in the United States, he cannot earn income and thus, should not be required to pay child support.

**{10}**     As the district court noted, and our own review confirms, Father misconstrues IRCA. Under IRCA, it is unlawful for an employer to knowingly employ an "unauthorized alien," which is a noncitizen or nonnational who is not authorized to work based on IRCA's requirements. 8 U.S.C. §§ 1101(a)(3); 1324a(1)(A), (h)(3). Employers who violate IRCA may face civil fines and criminal prosecution. 8 U.S.C. § 1324a(f),(g). ICRA does not subject unauthorized aliens who seek or obtain employment in the United States to criminal or civil sanctions. An unauthorized alien who works without authorization may be subject to criminal prosecution only if he knowingly uses forged, counterfeit, altered or falsely-made documents to obtain employment. 8 U.S.C. § 1324c(a); 18 U.S.C. § 1546(a). Thus, an unauthorized alien can work in the United States without risk of criminal punishment, even if such employment is inconsistent with the employer's restrictions under federal immigration law.

**{11}**     Father cites to *Gonzales v. Performance Painting Inc.*, 2013-NMSC-021, ¶ 40, 303 P.3d 802, to argue that "making an illegal job offer [is] a ruse when [the] employer knew or should have known of the injured worker's undocumented status." In *Gonzales*, our Supreme Court held that "employers who cannot demonstrate [a] good faith compliance with federal law in the hiring process cannot use their workers' undocumented status as a defense to continued payment of modifier benefits under the Workers' Compensation Act." *Id.* ¶ 1. *Gonzales* does not support Father's assertion.

**{12}**     Because Father fails to cite authority to support his assertion that it is illegal for him to work, he cannot earn income and thus, cannot be required to pay child support, we assume there is none and decline to further address this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2.

## C.    Father's Claims of Equal Protection Violations

**{13}**     Father argues the child support order violated his right to equal protection under the Fourteenth Amendment. He makes several arguments that we address in turn.

**{14}**     We first note that Father makes several contentions about equal protection violations regarding orders that are not properly before us. He argues mainly about the differences in the way the district court treated Father and Mother in former orders regarding custody and child support obligations. As Father appealed the May 2020

order regarding custody and child support, any other orders are not before us and we decline to address those claims.

**{15}** The remainder of Father's equal protection arguments can be summarized as "it was unequal" to (1) include Mother's speculation about Father's ability to work in the order's findings while ignoring Father's testimony; (2) not question or monitor Mother about her ability to provide support for Children while doing so to Father; (3) provide State-funded welfare to Mother but not to Father; (4) require Father to pay child support when he would like shared equal custody of Children; and (5) require judicial officers that review his case to undergo "biased" training that treats men as perpetrators of domestic violence and women as victims of domestic violence.

**{16}** The only authority Father provides to support these arguments is *Yick Wo v. Hopkins*, 118 US. 356, ¶ 18 (1886). The citation recites the statement of law that an equal protection violation may occur based on unequal administration of a statute and does not support any of Father's specific contentions regarding equal protection. Father's assertions are not supported by specific authority. *See* Rule 12-318(A)(4) NMRA (requiring briefs include "an argument which, with respect to each issue presented, shall contain . . . citations to authorities"). Because Father fails to cite authority to support his assertions regarding equal protection violations, we assume there is none and decline to further address this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2.

## D.     The District Court's Rulings Regarding Bad Faith

**{17}** Father states that the report adopted by the district court stated Father was not acting in bad faith but the order resolving his objections to the report stated he was acting in bad faith, and asks for clarification from this Court to determine if he was acting in good faith or bad faith because without such clarity, the order was not final.

**{18}** The report adopted by the district court stated, "The Hearing Officer finds that, in good faith, Father is capable of at least half-time employment at the current Santa Fe County minimum wage[.]" The district court clarified at the hearing that it believed Father made a good faith request to modify his child support obligation, which lead to the order decreasing his child support obligation. This does not conflict with the district court's review of Father's objections to the child support order, which concluded that an unauthorized immigrant can be ordered to pay child support, and income can be imputed to Father if he is unemployed in bad faith in order to avoid child support. The district court's finding was that Father's efforts to avoid *any* child support obligation—in response to the order that he pay a *decreased* amount of child support—were in bad faith. This finding was basis of the district court's denial of his request to decrease Father's obligation to zero dollars. The record contains no inconsistencies about a finding of bad faith regarding Father.

## E.     Substantial Evidence Supports the District Court's Imputation of Income to Father

**{19}** Father argues it was an abuse of discretion for the district court to not find him indigent, [1] which we construe as an argument that it was an abuse of discretion to impute potential income onto Father and require him to pay child support because he is indigent.

**{20}** It is in the discretion of the district court to set child support obligations in accordance with the child support guidelines. *Quintana v. Eddins*, 2002-NMCA-008, ¶ 9, 131 N.M. 435, 38 P.3d 203. The child support guidelines require the district court to make findings regarding the combined income of both parents and to calculate support obligations based on these findings. NMSA 1978, § 40-4-11.1(E) (2008, amended 2021).[2] We review the district court's factual findings regarding the income of each parent to determine whether they are supported by substantial evidence. *See Quintana*, 2002-NMCA-008, ¶ 9. In conducting this review, we view the evidence in the light most favorable to the prevailing party and indulge all reasonable inferences in support of the findings. *State ex rel. Child. Youth & Fams. Dep't v. Arthur C.*, 2011-NMCA-022, ¶ 27, 149 N.M. 472, 251 P.3d 729.

**{21}** Section 40-4-11.1(C)(1) defines "income" as "actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed." At the hearing regarding Father's motion to modify the child support order, Father introduced evidence regarding his change in circumstances. He stated that because of the separation with Mother he lost all of his belongings, had three surgeries in the previous five years, and was currently living in a homeless shelter. He also testified that before he was injured he was working at a recycling center and he has an eleventh-grade education.

**{22}** The hearing officer's report based on Father's motion stated:

> The Hearing Officer finds that, in good faith, Father is capable of at least half-time employment at the current Santa Fe County minimum wage, or $1,023 per month. "Good faith" in the context of underemployment typically means acting for a purpose other than to reduce or avoid a child support obligation. *Quintana*[, . . . 2002-NMCA-008, ¶ 17]. Father has not been adjudicated as disabled and is currently homeless. After weighing the testimony of the parties, the Hearing Officer determined that all available facts weigh towards imputing income to Father at an amount less than the current minimum wage, but do not justify a reduction in Father's imputed income to zero (0).

The hearing officer further recommended that Father pay $246.75 monthly in ongoing child support, $5.00 monthly in cash medical support, and that he satisfy a judgment for

---

1To the extent Father cites to *Turner*, 564 U.S. at 446, which addresses the right to counsel in civil contempt proceedings, and *State ex rel. Peters v. McIntosh*, 1969-NMSC-103, ¶ 11, 80 N.M. 496, 458 P.2d 222, which addresses the right to counsel in criminal proceedings, neither supports Father's contention that it was an abuse of discretion for the district court to not find him indigent.
2All references to Section 40-4-11.1 in this opinion are to the 2008 version of the statute.

$50,309.57 that was entered against him representing child support arrears through February 2020, and another for $8,627.48 that was entered against him representing accrued interest through February 2020, which the district court adopted.

**{23}** Father challenges this imputation of potential income because he does not have an actual and present ability to pay based on his status as an undocumented immigrant, his partial disability, his limited English, his inability to receive public benefits, and his upcoming surgeries that make him less attractive as an employee. However, in reviewing a substantial evidence claim, "the question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (alteration, internal quotation marks, and citation omitted). "We will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Id.* (alteration, internal quotation marks, and citation omitted).

**{24}** Based on the evidence presented that Father's surgical history has not resulted in a finding that he is disabled, he previously worked as a manual laborer, and he has an eleventh grade education, substantial evidence exists to impute Father's income to half-time minimum wage and supports his child support obligation.

## CONCLUSION

**{25}** We vacate the finding that he was in contempt of court for his failure to pay child support and entering an arrearage judgment, remand for proceedings consistent with this opinion, and otherwise affirm.

**{26}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**